UNITED STATES DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA DIVISION

**RUTH TERRY,**

Plaintiff,

v.                                          Civil Action No.: _____

**CITY OF VENICE, a Florida municipality,**

Defendant.                                  JURY TRIAL DEMANDED

_____/

## COMPLAINT

Plaintiff, RUTH TERRY, ("TERRY") by and through the undersigned counsel, alleges as follows:

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981 and § 1983; the Fourteenth Amendment of the Constitution of the United States and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.11 (1992).

2. All conditions precedent to filing this suit have been satisfied.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under 42 U.S.C. §2000e-5(f) and 28 U.S.C. §§ 1331, 1343 (a) and 1367.

4. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1391(b)(1) and (2) because the parties are located in or are residents of this

judicial district, and the unlawful events/employment practices complained of herein were committed in this district.

## **PARTIES**

5.  Plaintiff is a female African American over the age of 40. As such she is a member of a class of persons protected from employment discrimination by Title VII and rights secured by the Civil Rights Act of 1964, as amended in 42 U.S.C. §2000e et seq.; 42 U.S.C. §1983; the Age Discrimination in Employment Act of 1967, as amended, the Fourteenth Amendment of the Constitution of the United States; and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §760.11 (1992).

6.  Defendant CITY OF VENICE, FLORIDA ("VENICE") is a Florida municipality, organized and existing under the laws of the State of Florida. It is located within Sarasota County, Florida, and therefore is within the jurisdiction of this Court.

7.  Defendant's City Manager is and at all times relevant herein was Edward F. Lavallee, ("Lavallee") who, pursuant to Venice Municipal Code §50-31, is the chief administrative officer of the city.

8.  As City Manager, Lavallee is and at all times relevant herein was responsible for the overall supervision of all personnel matters. Lavallee is and was authorized and tasked with exercising control over, among other things, the Venice Police Department ("VPD"), Defendant's Director of Human Resources Alan Bullock and Thomas Mattmuller, the Chief of Police/Chief Executive Officer/ Commanding Officer and the EEO Officer of the VPD.

9.  At all times material to this action, VENICE was an "employer" within the meaning of Section 42 U.S.C. §§1983 and 2000e.

10.  At all times material to this action, TERRY is an "employee" of VENICE's police department within the meaning of 42 U.S.C. §§1983 and 2000e *et seq.*.

## **BACKGROUND**

11. This action seeks damages as well as declaratory and injunctive relief against Defendant who discriminated against employee TERRY on the basis of her age, race, and gender thereby.  Further, VENICE unlawfully retaliated against TERRY when she reasonably opposed its discriminatory treatment against her, when she participated in co-worker Officer Kenite Webb's opposition to race discrimination committed by Venice and/or its non-supervisory employees and complained of disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e-3(a).

12. On or about April 15, 2019, TERRY filed a Charge with the U.S. Equal Employment Opportunity Commission (EEOC) alleging Venice discriminated against her on the basis of age, gender and race and further committed unlawful retaliatory conduct after she complained as set forth hereinafter.

13. Pursuant to the work share agreement by and between the Florida Commission on Human Relations ("FCHR") and the EEOC, Plaintiff's claim was dually filed with the FCHR.

14. On or about February 26, 2021 the EEOC issued its Dismissal and Notice of Rights including TERRY's right to file a lawsuit ("right to sue letter"), a copy of which is attached hereto as Exhibit "A".

15. TERRY, through legal counsel, received notice of the termination of the EEOC inquiry regarding TERRY's discrimination claim upon receipt of the EEOC's right to sue letter on March 10, 2021.

16. Ninety days after March 10, 2021 is June 8, 2021, the day by which Plaintiff is required to have commence this suit.

17. This action was commenced prior to the deadline of June 8, 2021 and is therefore timely.

18. TERRY duly exhausted her administrative procedure prerequisites prior to commencing this action.

19. All conditions precedent to instituting this action have been satisfied.

## FACTUAL ALLEGATIONS

### *TERRY's Employment with the Venice Police Department*

20. At all times material to this action, VENICE employed more than fifteen employees and was Plaintiff's employer within the meaning of Title VII, as amended, 42 U.S.C. §2000(a) to (b).

21. At all times material to this action, Defendant, through its City Manager Lavallee, exercised power and control, and was the final policy maker with respect to VPD's policies, practices and procedures maintained by its police service (VPD) including those that are the subject of this action.

22. At all times material to this action, TERRY is and was employed as a police officer with VPD, and is and was a member of the Fraternal Order of Police.

23. At all times relevant herein, TERRY is and was a member of the local Police Pension Fund for purposes of retirement.

24. At all times relevant herein, TERRY is, was and continues to be qualified for employment with the Defendant as a Florida state certified law enforcement officer position.

25. Defendant VENICE is responsible for the acts and omissions of its command staff, supervisors and officers, who at all times relevant herein were acting within the scope of their employment, and under the color of law pursuant to a policy, custom and/or practice of race, color, age and/or gender discrimination, in violation of TERRRY's equal protection rights guaranteed under the Fourteenth Amendment to the Constitution of the United States.

26. Prior to the actions giving rise to the claims herein, TERRY's job performance was reported as satisfactory or above satisfactory, and was reported as such on Defendant's periodic performance evaluations of her job performance.

27. During her initial employment with Venice in November 2002 until February 2019, TERRY was never subjected to any workplace discipline and thus enjoyed an unblemished performance record at VPD.

28. At all times relevant and material, Defendant VENICE acted under color of law.

29. VPD employs two African American police officers at all times relevant herein, TERRY is one of the two and the only female African American police officer.

30. TERRY has been employed with VPD for over eighteen years. On or about October 1, 2014, TERRY elected to retain her vested membership credit with the City of Venice Chapter 185 retirement plan, retain the accrued benefit, and begin participating in the Florida Retirement System ("FRS").  As a result, Venice must contribute to TERRY's pension payments upon retirement unless TERRY is decertified before she is eligible to retire.

### *Defendant's Policy, Custom and Practice of Discrimination*

31. For over a century the US Supreme has declared invalid municipal ordinances restricting occupancy in designated areas to persons of specified race and color as denying African American's the rights guaranteed by the due process clause of the Fourteenth Amendment to purchase property outside of the designated area. *Buchanan v. Warley*, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (U.S. 1917).

32. Despite *Buchanan*, and its various progeny, Venice has promoted a policy, custom and practice of race discrimination for almost a century as evidenced by the  John Nolen Plan developed in 1926, City Ordinance #204 and more recently its municipal code architectural board.   This decades long policy has resulted in pervasive race discrimination that infects the City of Venice and its police department

### *John Nolen and the City of Venice.*

33. The City of Venice was established by "chapter 11776, Laws of Florida, Extraordinary Session of 1925, approved by the Governor on November 30, 1925, and the officials, it appears from the record, began to function under their appointment by the Governor in

December, 1926. The Legislature of 1927, by chapter 13478 (Sp. Act), changed the name from the town of Venice to the city of Venice"[1].

34. The newly chartered city, now referred to as Venice's historic District was originally owned by Bertha Palmer who sold it to inventor Fred Albee who then flipped the land at a significant profit nine weeks later to the Brotherhood of Locomotive Engineers ("BLE").

35. BLE hired landscape architect John Nolen to create the city plan, "the John Nolen Plan". The Plan covered Venice Island[2] and the "Edgewood Section" located east of the U.S. 41 Bypass[3]. The Edgewood neighborhood was designed for the African American workers who made up more than half the work force that built Venice.[4]  The 230 acre "Harlem Village" was to be placed east of the railway conveniently surrounded by white farms, leaving no room for African American ownership of farmland in Venice. Nolan's plan for "Harlem Village" crashed along with real estate prices in 1927.[5]

36. John Nolen remains a source of pride to Venice as evidenced by Defendant's memorializing Nolen's segregationist city plan for Venice in its application to the US

---

[1] *City of Venice v. State*, 96 Fla. 527, 528–29 (1928)

[2] Created by the artificial Intracoastal Waterway built in 1967. *See*, Defendant's registration form presented, in August 2010, to the U.S. Department of the Interior National Park Service for nomination of the "John Nolen Plan of Venice Historic District" to be  registered in the National Register of Historic Places, OMB No. 1024-0018, section 8, page 28.

[3] The bypass did not exist at that time it was built after the Intracoastal Waterway.

[4] *John Nolen: Racism and City Planning; R. Bruce Stephenson*, Library of American Landscape history, View From the Director's Office, Summer 15, number 15, page 11.

[5] *Id. passim.*

Department of Interior National Park Service,  by naming a park after him, and enshrining the "racial zoning" in its current municipal code's architectural standards.

37. Defendant's City Manager, Edward LaVallee ("EL"), has testified in a related proceeding[6] currently pending in this Court that he had to "learn when I applied for the job. I had to know who John Nolen was."

### *City of Venice Ordinance #204*

38.  Fast forward through the Great Depression, twenty years later, on February 18, 1947, Venice created a revised version of Nolen's  "Harlem Village"[7] with the passage of Ordinance #204. *See* attached exhibit B & C respectively.

39. Ordinance #204 established separate residential districts for white and "negro" residents, made it illegal for either race to reside in the area reserved for the opposite race, unless one was a resident domestic servant. *Id*. §3. Punishment for violating the ordinance the first time was a fine of at least $10.00, not more than $50.00, and could be assessed on a daily basis as separate offenses. *Id*. §4.

40. The area reserved for African American residents is located within Section 7, Township 39 South, Range 19 East, a miniscule amount of land in comparison to the land area reserved for whites which included the entirety of what is now referred to as Venice Island and the replatted Edgewood Section.

---

[6] *Kenite Webb v. City of Venice*, Case No.: 8:19-cv-03045-TPB-TGW, DE 62-8 @ PAGEID 1088 at p. 118: 23- 119:5.
[7] *See supra* ftnt 4. at section 8, page 20.

41. Ordinance #204 has not been formally repealed. The 1964 Civil Rights Act and Article I, § 2, FLA. CONST. have preempted its enforcement by operation of law.

42. On March 27, 2012 the "City of Venice Human Rights Act", Ord. No. 2012-12, § 1 became effective and prohibits discrimination as to employment, housing, business establishments, public accommodations and housing.

   a) Section 2-353 entitled , "Definitions", provides the following definition:

> [d]iscriminate, discrimination or *discriminatory* means any act, policy, advertisement or practice which, regardless of intent, has the effect of subjecting any person to differential treatment as a result of that person's actual or perceived race, color, creed, religion, national origin, ancestry, disability, age, marital status, sex, sexual orientation, gender identity or expression, or physical characteristic. Discrimination also includes any differential treatment because of one's association with a person or group of people identified herein.

   b) Section 2-354. Entitled "Prohibited acts of discrimination-Employment" provides.

> With regard to employment, it shall be unlawful for any employer or labor organization, to engage in any of the following acts, wholly or partially for a discriminatory reason:

> (1) To discriminate against any individual, with respect to failure to hire, refusal to hire, discharge, compensation, terms, conditions, or privileges of employment, including promotion; however nothing in this subsection shall be construed to require any employer to provide benefits, such as insurance, to individuals not employed by the employer;

> (2) To limit, segregate, or classify employees in any way which would deprive or tend to deprive any employee of employment opportunities, or which would otherwise tend to adversely affect his or her status as an employee; or…

### *VENICE's Longstanding Policy and Practice of Workplace Discrimination*

43. Venice's decades long delay in enacting Human Rights local ordinances reveals its resistance to integration.  Rather than acknowledge that Venice's historic racial zoning laws resulted in its current demographic of .8% African American citizens, Venice's defense to the EEOC Charge incorporated that number to justify the fact that it employs only two African American police officers. *See*, Defendant's Position Statement in response to Charge, page 2.

44. Venice's decades long delay in enacting Human Rights local ordinances exemplifies its resistance to integration and is indicative of the existing disparate treatment of minorities giving rise to the complaints by TERRY and other VENICE employees.

45. Additional instances are set forth herein which further demonstrate that VENICE continues to engage in a longstanding policy and practice of unlawful employment discrimination and retaliation.

46. On or about January 25, 2002 four VENICE public works department employees hung a noose over the desk of a black public works supervisor.  Defendant's then City Manager, George Hunt found that the incident was no more than a practical joke that went too far and issued only oral reprimands to the employees.

47. Only after that incident garnered attention did one of the four employees alleged to have committed the racist act receive a three day suspension without pay.  The remaining three employees received written reprimands in their personnel files.

48. In December of 2018 a black African American police officer employed by VENICE commenced an action against Defendant for racial discrimination in an action entitled *Kenite Webb vs. City of Venice, a Florida Municipality* 8:19-cv-03045-TPW filed in this Court.   That action alleges Webb was subjected to disparate treatment, discrimination, deliberate indifference to discrimination, a hostile work environment and retaliation as a result of a widespread custom, policy or practice of racial discrimination.

49. In September of 2020 VENICE agreed to a) pay a former African American employee James Williamson ("Williamson") the sum of $195,000 in lost wages and damages, b) develop and train supervisors and managers on anti-discrimination policies approved by the United States Department of Justice ("USDOJ"), c) rate all supervisors and managers on compliance with anti-discrimination laws and policies in their performance evaluations;  d) undergo an eighteen month period of reporting to and monitoring by the USDOJ regarding internal or external complaints of racial discrimination by employees and VENICE's handling of said claims; e) to settle an action commenced by the United States Justice Department which alleged VENICE engaged in unlawful race based discrimination; as well as other relief. That action was styled *United States of America v City of Venice, Florida,* 8:20-cv-02161 (MD. Fl. 2020).

50. VENICE's position in the *Williamson* case is summarized in a January 12, 2015 Interoffice Memorandum by Alan Bullock as Director of Administrative Services and

Len Bramble, Assistant City Manager.  The Memorandum stated, "…we could not identify any evidence of harassment or discrimination in the workplace."

51.  The United States Department of Justice ("DOJ") investigated Williamson's claims and concluded otherwise.  In a February 13, 2020 letter to VENICE's then legal counsel, the DOJ concluded that the facts showed that the City discriminated on the basis of race and that VENICE's reasons for its actions were pretext for unlawful racial discrimination.

52. President of AFSCME Local 1718 City of Venice, Dan Tucci, brought an EEOC Charge due to retaliation he suffered at VENICE resulting from assisting James Williamson with his EEOC inquiry and Charge (62-9 Def 5953;EEOC charge # 511-2015-01072)

53. A female administrative services employee of Defendant, RR, brought an EEOC Charge against VENICE on the same day that Kenite Webb's EEOC Charge was sent to VENICE; the complainant alleged VENICE committed discriminatory acts against her because of her gender.

## Specific Allegations of Discrimination against TERRY

54. TERRY commenced her employment with VPD as a full time law enforcement officer on or about November 18, 2002.  Her initial annual salary was $29,220.67.

55. Pursuant to a special assignment, TERRY worked as a School Resource Officer between in or about August 2011-August 2019 when that position was eliminated

**56.**  Prior to the November 2018 incident giving rise to the claims herein, TERRY **was never disciplined.**

57.  At all times prior to the November 2018 incident giving rise to the claims herein TERRY was a model police officer.

58.  On or about November 24, 2018, TERRY was accused of refusing to work for a Venice special event, specifically, the annual holiday parade kicking off the December holiday season.

59.  Said parade is described by defendant as "a maximum deployment date" and a "standing fixture on the city's calendar".

60. Prior to 2018, TERRY had on two prior occasions been excused from this alleged mandatory attendance assignment.

61. In the past, VENICE acquiesced to TERRY's requests to be excused from mandatory parade duty.

62. In 2018 TERRY was assured she was excused from the parade detail as she was in the past.

63. Nevertheless, in imposing the strict punishment complained of herein, Defendant alleged that supervisors were not empowered to grant time off from the parade detail.

64. Venice conducted an Internal Affairs Investigation against TERRY regarding the November 24, 2018 parade detail.

65. By Notice of Pre-Determination Hearing dated January 7, 2019, TERRY was advised of a proposed twenty-four hour unpaid suspension.

66. The Statement of Charges in the Notice of Pre-Determination Hearing alleged that TERRY "refused to comply with this order (to work the city's annual holiday parade), due to a hair appointment….As a result of your refusal, other resources had to be reassigned."

67. No "order" in accordance with standard operating procedures including SOP 103 "Written Directives" was issued to TERRY regarding the parade detail.

68. In derogation of Venice protocol, rules and regulations, including but not limited to Standard Operating Procedure 112 "Personnel Conduct Complaints", TERRY was not notified of the pendency of Defendant's Internal Affairs Investigation against her as required by Ch. 112 *Fla.Stat.* and SOP 112 when she was questioned by her supervisor, Sgt. Goodson about the alleged misconduct that yielded the twenty-four hour unpaid suspension, *supra*.

69. Said questioning by a superior was conducted without TERRY being afforded the constitutional rights and protections guaranteed to her pursuant to *Garrity v New Jersey*, 385 U.S. 493 (1967) in such circumstances as were then and there present.

70. On January 23, 2019, Defendant conducted a pre-determination hearing regarding the disciplinary proceedings against TERRY.

71. During that hearing TERRY complained of disparate treatment on the part of Defendant including favoritism, uneven application of discipline and leave time afforded other officers.

72. Defendant unjustly disciplined and punished TERRY by imposing a twenty-four hour unpaid suspension, despite the fact that the alleged offense was the first and only time in the , then,  sixteen years of employment with VPD that TERRY was disciplined.

73. TERRY served her unpaid twenty-four hour suspension which resulted from Defendant's severe and pervasive race, color, gender and age based employment discrimination and retaliation by Defendant through the actions of City Manager Edward LaVallee, Director of Human Resources Alan Bullock, Police Chief Thomas Mattmuller and other employees.

74. TERRY opposed Defendant's unlawful and discriminatory employment practices and thereby engaged in protected activity under the opposition clause of Title VII's antiretaliation provision, 2 U.S.C.A. 2000e-(3)(a).

75. The punishment imposed against TERRY was approved by Chief Mattmuller, who participated in other discriminatory employment matters including but not limited to the unjust and discriminatory discipline of the only other African American police officer employed by VPD.

76. The punishment imposed against TERRY was part and parcel of a pattern and practice of discrimination on the part of defendant, including disparate treatment based upon race, age and gender.

77. TERRY opposed VPD's discriminatory employment practices including those against the only other African American police officer employed by VPD.

78. Defendant commenced an Internal Affairs investigation against TERRY without notifying her, and proceeded with said investigation without any input from her. In so

doing, VPD improperly ignored and consciously disregarded the strict disclosure requirements regarding the conduct of Internal Affairs investigations found in the Officers Bill of Rights. The foregoing was in derogation of TERRY's rights thus evidences the systemic prejudice and discrimination in the Defendant's police force and administrative offices.

79. Subsequently, TERRY was subjected to a Supervisory Review based upon compelled interrogation by Sergeants Quick and White on January 10th and 11th in derogation of requirements of applicable rules and regulations including but not limited to Florida Statutes Section 112.532.

80. As a result of the foregoing, the disciplinary charge lodged against TERRY was improperly sustained and she was unjustly reprimanded and disciplined in derogation of applicable procedure and legal requirements.

81. For her first and only sustained offense in over eighteen years of employment with VPD, TERRY was subjected to an unpaid twenty-four hour suspension

82. TERRY served said unpaid suspension.

83. As a direct and proximate result thereof, TERRY was subjected to improper and unlawful discipline with disregard to her procedural and substantive rights then and there applicable.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF 42 U.S.C. § 1983:**
**<u>DISCRIMINATORY CUSTOM CLAIM</u>**

84. TERRY repeats and re-alleges every factual allegation as stated in paragraphs 1-83 of this Complaint as if fully set forth herein.

85. The discriminatory acts of which TERRY complains, including those incidents and conduct described in the Factual Allegations above, were performed pursuant to a larger custom, policy or practice of discrimination maintained by Defendant in violation of 42 U.S.C.A. §1983.

86. At all times relevant, Defendant Venice maintained a widespread custom, policy, or practice of race, color, gender and age harassment and discrimination that is so permanent and well settled as to constitute a "custom or usage" with the force or effect of law.

87. Prior employment discrimination claims have been brought against Venice in this Court based upon much of the same and similar conduct as was directed against TERRY as set forth herein.

88. In *United States of America v City of Venice, Florida*, Case No.: 8:20-cv-02162 designated as a related action to the Webb case, see DE 42, involved claims similar to this case and to Webb. It follows that the settlement is relevant to Defendant's prior notice because it demonstrate the inadequacies of Defendant's policies and past enforcement efforts to investigate, prevent and punish claims similar to the present action.

89. This discriminatory custom, policy or practice referred to herein was a proximate cause of Plaintiffs' injuries.

90. Defendant Venice had a custom, policy or practice of condoning or tacitly authorizing discrimination on the basis of race, gender, color and age by supervisors and officers,

against employees who were of African American descent, female or over the age of 40, including Plaintiff.

91. Venice's personnel actions were illegally tainted by considerations of age, race and gender in derogation of applicable law.

92. Furthermore, Defendant Venice was aware of the discriminatory acts of which Plaintiff complains, but acted with deliberate indifference to the conduct and did nothing about it.

93. Defendant Venice through its City Manager, Lavallee, who is also Defendant's chief administrative officer and responsible for supervision of all personnel matters knew or should have known of the discriminatory conduct because plaintiff complained to her superior officers, including Chief Mattmuller who had an obligation to advise defendant of such conduct.

94. Defendant Venice, through the actions of their agents or employees, including City Manager Lavallee and Chief Mattmuller disregarded the requirements to conduct a genuine investigation and remedy the aforesaid claims of discrimination.

95. Moreover, TERRY, through her counsel, filed formal complaints with Chief Mattmuller and City Manager Lavallee, alleging that her supervisors and co-workers retaliated against TERRY, created a hostile work environment and committed discriminatory conduct against TERRY because of her age, gender and race.

96. Because TERRY made a formal complaint, Venice, through Chief Mattmuller, was required to conduct an Internal Administrative Investigation to determine if any of the allegations were accurate.

97. However, Defendant Venice conducted a sham investigation or ignored TERRY's complaints thus evidencing systemic prejudice and discrimination in the Defendant Venice's police force and administrative offices.

98. Defendant Venice's custom, policy or practice of ignoring and/or rejecting complaints of discrimination on the basis of age, gender and race was a proximate cause of Plaintiff's injuries.

99. Defendant Venice has a custom, policy or practice of failing to properly train employees in matters of age, gender, race and diversity training so that actionable workplace hostility is fostered rather than suppressed.

100. Defendant's custom, policy or practice of failing to properly train its employees as aforesaid was a proximate cause of Plaintiff's injuries.

101. Defendant has a custom, policy or practice of treating employees who are of African American descent, female and/or over the age of 40 differently from employees who are not female, African American and/or over the age of 40.

102. The rules were applied more harshly to employees who were over the age of 40, female or of African American descent than they were to employees who were not over the age of 40, female or of African American descent.

103.   Employees who were over the age of 40, female or of African American descent were subjected to greater scrutiny than were employees who were not over the age of 40, female or of African American descent.

104.   Employees who were over the age of 40, female or of African American descent were held to a different standard than those employees who were not over the age of 40, female or of African American descent.

105.   Employees who were over the age of 40, female, or of African American descent were scored more harshly on their evaluations than employees who were not African American descent.

106.   Employees who were over the age of 40, female, or of African American descent were criticized more harshly on their evaluations than employees who were not over the age of 40, female, or of African American descent.

107.   Employees who were over the age of 40, female, or of African American descent were not afforded the same terms, conditions and privileges of employment as were employees who were not over the age of 40, female, or of African American descent

108.   Additionally, employees who were over the age of 40, female, or of African American descent were treated less favorably than employees who were not of over the age of 40, female, or of African American descent.

109.   Defendant's custom, policy or practice of treating employees who were over the age of 40, female, or of African American descent differently from employees who

were not over the age of 40, female, or of African American descent was the proximate cause of Plaintiff's injuries.

110.   Furthermore, Plaintiff's suffered deprivations of her constitutionally protected rights as a direct and proximate cause of the actions and omissions described herein by  Defendant VENICE who is a final policy maker under 42 U.S.C.A. § 1983 with respect to certain terms and conditions of TERRY's employment.

111.   At all times material to this action, all of Defendant's employees exhibiting discriminatory conduct towards TERRY were in positions that possessed the authority to affect the terms, conditions, and privileges of TERRY's employment with Defendant VENICE.

112.   The actions, and failure to act as set forth herein were so severe and pervasive as to alter the terms, conditions and/or privileges of TERRY's employment with the Defendant VENICE and thereby created a hostile work environment.

113.   TERRY's previously unblemished employment record with Defendant was tarnished and she was subjected to scorn, disdain, shame and ridicule as a result of the unlawful and discriminatory conduct of the Defendant.

114.   The discrimination TERRY endured was based upon her race, gender and/or age, in that but for the fact that TERRY is an over 40 years old female of African American origin, she would not have been the object of discrimination.

115.   As a result of the actions, and failure to act when a non-discriminatory employer would act, of the Defendant, as alleged herein, TERRY has been the victim of negative

employment actions and has been exposed to ridicule and embarrassments and he has suffered emotional distress and damage.

116.   After being subjected to this hostile and offensive work environment created and ignored by Defendant VENICE, the terms, conditions, and/or privileges of TERRY's employment and her psychological well-being were adversely affected under applicable law, when the work place became hostile.

117.   The conduct of the Defendant VENICE, by and through the conduct of its agents, employees, and/or representatives, and the Defendant VENICE failure to make prompt remedial action to prevent continued discrimination against TERRY, deprived TERRY of her statutory right under federal law.

118.   Defendant Venice engaged in deliberate indifference by failing to timely and appropriately prevent and punish the discriminatory conduct complained of herein which TERRY endured in the workplace under Defendant's control.

119.   The actions of the Defendant VENICE and/or its agents  as set forth herein were willful, wanton, and intentional and with reckless indifference to TERRY's statutorily protected rights, thus entitling TERRY to compensatory and other damages against VENICE for its actions and to deter Defendant, and others, from such action in the future.

120.   TERRY has suffered and will continue to suffer both irreparable injury and compensable damages as a result of the Defendant VENICE's discriminatory practices and retaliation unless and until this Court grants relief as requested herein.

WHEREFORE, TERRY respectfully requests that this Honorable Court:

a) Enter judgment for TERRY and against the Defendant VENICE, on the basis of Defendant VENICE 's willful violations of 42 U.S.C. § 1983;

b) Award TERRY equitable damages;

c) Award TERRY compensatory damages under 42 U.S.C. § 1983 for embarrassment, anxiety, humiliation, and emotional distress she has suffered;

d) Award TERRY damages for Venice's willful violations of U.S.C. § 1983;

e) Award TERRY as to this count prejudgment interest;

f) Award TERRY damages for the amount of the costs of litigation and filing, including attorney's fees;

g) Enjoin Defendant Venice from discriminating, harassing, and retaliating against TERRY and any other employee;

h) Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to Federal Law including damages; and

i) TERRY demands a trial by jury.


**SECOND CAUSE OF ACTION:**
**VIOLATION OF TITLE VII,**
**DISCRIMINATION BASED**
**ON RACE, AGE AND GENDER**

121.   TERRY repeats and re-alleges every factual allegation as stated in paragraphs 1-83 of this Complaint as if fully set forth herein.

122.   TERRY, as an over 40 year old female of African American descent, is a member of protected classes.

123.   TERRY has been employed by Defendant, Venice, since on or about November 18, 2002.

124.   During the course of TERRY's employment with Defendant Venice, TERRY has been subjected to a discriminatory, hostile and offensive work environment and retaliation because of her race, gender and age as more fully described in the Factual Allegations and in Count I of this Complaint.

125.   TERRY opposed Defendant's unlawful employment practices of among other things, disparate treatment of employees of African American decent, females, and those over the age of forty.

126.   TERRY's activities as aforesaid were protected activity under the opposition clause of Title VII's antiretaliation provision 42 U.S.C.A. 2000e-3(a).

127.   The environment referred to herein included, but was not limited to:

     a.   Complaints by employees who were not African American, female, and over forty years of age descent were not disregarded or ignored.

     b.   The rules were applied more harshly to TERRY than they were to employees who were not over forty, female and of African American descent.

     c.   The rules are not equally and consistently applied, resulting in subjective and inconsistent policies and punishment.

      d.     TERRY was subjected to greater scrutiny than were employees who were not female, not over forty and not of African American descent.

      e.     TERRY was held to a different standard than those employees who were not female, not over forty and not of African American descent.

      f.     TERRY was not afforded the same terms, conditions and privileges of employment as were employees who were not female, not over forty, and not African American descent.

      g.     Additionally, TERRY was treated less favorably than employees who were not female, not over forty, and not of African American descent.

128.    Plaintiff was subjected to the conduct referred to herein because she is female, over forty and of African American descent.

129.    Similarly situated employees who were not female, over forty and of African American descent were not subjected to the conduct referred to herein.

130.    As a direct and proximate result of the foregoing, Plaintiff's authority as a police officer was undermined which interfered with her ability to perform her job.

131.    Despite Plaintiff's formal complaints to Defendant utilizing the applicable grievance procedures Defendant failed and refused to take any action to correct the conduct complained of herein and prevent further abuses and acts of retaliation.

132.   The discriminatory acts and environment described herein were otherwise known by Defendant.

133.   Despite Plaintiff's complaints set forth herein Defendant failed to take appropriate remedial action.

134.   Defendant's discriminatory behavior was part of a custom, pattern and practice of unlawful retaliation, harassment and discrimination of female employees, employees over the age of forty, and employees of African American descent.

135.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other damages including economic damages.

136.   Plaintiff has suffered damages of an on-going and continuous nature.

   63.   Plaintiff has suffered damages of an on-going and continuous nature.

WHEREFORE, Plaintiff, TERRY , requests that this Honorable Court:

   a.   Enter judgment for TERRY   and against all Defendant on the basis of Defendant's willful violations of Title VII;

   b.    Award TERRY  equitable damages;

   c.   Award TERRY  compensatory damages under Title VII for embarrassment, anxiety, humiliation, and emotional distress he has suffered;

   d.   Award TERRY  as to this count prejudgment interest;

   e.   Award TERRY damages for the amount of the costs of litigation and filing, including attorney's fees;

     f.  Enjoin Defendant, their officers, agents, employees, and anyone acting in concert with them from discriminating, harassing, and retaliating against TERRY  and any other employee;

     g.  Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to Federal Law; and

     h.  TERRY demands a trial by jury

### THIRD CAUSE OF ACTION:
### VIOLATION OF TITLE VII
### <u>RETALIATION BY DEFENDANT</u>

137.   TERRY re-alleges every factual allegation as stated in paragraph 1-83 of this Complaint.

138.   Title VII, 42 U.S.C.A. § 2000e-3(a), prohibits covered employers from taking reprisal against an employee for complaining about practices which the employee reasonably and in good faith believes are discriminatory.

139.   TERRY, consistently during her employment, opposed employment practices which she reasonably believed were discriminatory.

140.   Defendant, VENICE, by and through its supervisory employees, Lavallee and Mattmuller, retaliated against TERRY because of her opposition by commencing an Internal Affairs investigation of which she was not advised, questioning her without providing required Garrity rights, and imposing harsh disciplinary measures against her for her first offense in 16 years after she complained of Defendant's discriminatory conduct.

141.   By taking these and other actions against her, Defendant committed unlawful reprisal against TERRY in violation of Title VII, 42 U.S.C.A. § 2000e-3(a).

142.   Defendant's wrongful actions as alleged in the preceding paragraphs directly and proximately caused TERRY financial injury and great mental distress and were done with reckless indifference to TERRY's constitutional right to oppose said misdeeds on the part of the Defendant.

WHEREFORE, TERRY  respectfully requests that this Honorable Court,

a)  Enter judgment for TERRY   and against defendant on the basis of its willful violations of 42 U.S.C.A. § 2000e-3(a);

b)  Award TERRY  equitable damages;

c)  Award TERRY  compensatory damages under Title VII for embarrassment, anxiety, humiliation, and emotional distress he has suffered;

d)  Award TERRY  as to this count prejudgment interest;

e)  Award TERRY   damages for the amount of the costs of litigation and filing including attorney's fees;

f)  Enjoin Defendant, their officers, agents, employees, and anyone acting in concert with them from retaliating against TERRY  and any other employee;

g)  Grant such other and farther equitable relief as this court deems equitable and just and/or available pursuant to Federal Law; and

h)  TERRY  demands a trial by jury.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT OF 1992**
**<u>DISCRIMINATION BASED ON AGE, GENDER and RACE</u>**

143.    TERRY re-alleges every factual allegation as stated in paragraphs 1-83 of this Complaint.

144.    At all times material to this action, Defendant Venice conducted unlawful employment practices against TERRY by discriminating against her and by allowing its employees to discriminate against her on the basis of TERRY being an individual of African American race, a female and over the age of forty.

145.    At all relevant times mentioned in this Complaint, including the discriminatory conduct of the Defendant administration and employees, Defendant VENICE was aware that TERRY is over forty, female and of  African American decent.

146.    At the time Defendant VENICE took negative employment action against TERRY, TERRY did perform and excel at the performance of the essential functions of her position.

147.    TERRY was qualified for the position held with the Defendant VENICE.

148.    TERRY was treated differently from other employees by her supervisors working for Defendant VENICE on the basis of race, gender and age.

149.    The negative employment actions of Defendant VENICE against TERRY and other acts were directly and proximately caused by the Defendant unjustified discrimination against TERRY because of her gender, age and  race while working for Defendant VENICE, violated §760.10 Fla. Stat.

150.    As a direct and proximate result of the Defendant VENICE's intentional conduct, TERRY suffered serious economic losses as well as mental pain and suffering.

151.   Any alleged nondiscriminatory reason for this treatment of TERRY asserted by Defendant is a mere pretext for the actual reason for the Defendant's negative employment actions, her gender, age and race.

152.   The Defendant VENICE's actions were recklessly indifferent to TERRY's rights pursuant to §760.10 Fla. Stat., protecting a person from discrimination because of race, color, religion, sex, race, age, handicap, or marital status.

153.   The aforementioned actions of Defendant VENICE was done wantonly, willfully, and with reckless disregard of the consequences of such actions.

WHEREFORE, TERRY, respectfully requests that this Honorable Court:

a.   Grant a permanent injunction enjoining Defendant VENICE, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race.

b.   Revise TERRY  Performance Evaluations to reflect an unbiased evaluation of her skills;

c.   Reinstate TERRY  to an equivalent position as the now defunct School Resource Officer position and Traffic Homicide Investigation and Reconstruction;

d.   Order Defendant VENICE to make TERRY  whole, by compensating her for lost wages, benefits, including front pay, back pay, with prejudgment interest and other remuneration for mental pain, anguish, pain and humiliation from being held back due to race;

e.    For a money judgment representing prejudgment interest.

f.   Award any other compensation allowed by law including attorney's fees.

g.   TERRY  demands a trial by jury.

## FIFTH CAUSE OF ACTION:
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT OF 1992
## RETALIATION BY DEFENDANT

154.   TERRY re-alleges every factual allegation as stated in paragraphs 1-83 of this Complaint.

155.   Section 760.10 Fla. Stat. prohibits covered employers from taking reprisal against an employee for complaining about practices which the employee reasonably and in good faith believes are discriminatory.

156.   TERRY, consistently during her employment, opposed employment practices which she reasonably believed were discriminatory.

157.   Defendant, VENICE, by and through its supervisory employees, retaliated against TERRY because of this opposition by imposing unduly harsh discipline and punishment for a first offense.

158.    VENICE thereby committed unlawful reprisal against TERRY in violation of Section 760.10 Fla. Stat.

159.   VENICE's wrongful actions as alleged in the preceding paragraphs caused TERRY considerable financial injury and great mental distress and were done with reckless indifference to TERRY's constitutional right to oppose discriminatory practices.

WHEREFORE, TERRY, respectfully requests that this Honorable Court:

    a.  Grant a permanent injunction enjoining Defendant VENICE, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race;

    b.  Revise TERRY's Performance Evaluations to reflect an unbiased evaluation of her skills;

    c.  Assign TERRY to an equivalent position as the now defunct School Resource Officer position and Traffic Homicide Investigation and Reconstruction;

    d.  Order Defendant VENICE to make TERRY whole, by compensating her for lost wages, benefits, including front pay, back pay, with prejudgment interest and other remuneration for mental pain, anguish, pain and humiliation from being held back and harassed due to race.

    e.  For a money judgment representing prejudgment interest.

    f.  Award any other compensation allowed by law including attorney's fees.

    g.  TERRY demands a trial by jury.

JURY DEMAND

Plaintiff demands a jury trial of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully submitted,

/s/ Kerry E. Mack
Kerry E. Mack, Esquire
Florida Bar No.: 337897
/s/ Jacqulyn Mack-Majka
Jacqulyn Mack-Majka, Esquire
Florida Bar No.: 0134902
**MACK LAW FIRM CHARTERED**
Primary:  **eservice1@macklawfirm.org**
Secondary: **eservice2@macklawfirm.org**
2022 Placida Road
Englewood, Florida  34224-5204
(941) 475-7966
(941) 475-0729 fax

*Attorneys for Plaintiff RUTH TERRY*

EXHIBIT "A" Right to Sue Letter
EXHIBIT "B" Defendant's Response to EEOC Charge

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Ruth M. Terry<br>728 Church St, PO Box 531<br>Laurel, FL 34272 | From: Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2019-01892 | Jesus Gonzalez,<br>Investigator | (813) 202-7904 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Evangeline Hawthorne*

February 26, 2021

**Evangeline Hawthorne,**
**Director**

*(Date Issued)*

Enclosures(s)

cc:
Mark E. Levitt
Allen Norton & Blue, P.A.
1477 W. Fairbanks Avenue
Winter Park, FL 32789

Jacqulyn Mack-Majka, Esq.
MACK LAW FIRM CHARTERED
2022 Placida Rd
Englewood, FL 34224

Enclosure with EEOC
Form 161 (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

RECEIVED  MAR 10 2021  RECEIVED  MAR 10 2021  RECEIVED



## ALLEN NORTON & BLUE
PROFESSIONAL ASSOCIATION

1477 West Fairbanks Avenue, Suite 100 • Winter Park, Florida 32789
Telephone 407-571-2152 • Facsimile 407-571-1496

May 20, 2019

*__VIA EEOC RESPONDENT PORTAL__*

U.S. Equal Employment Opportunity Commission
Tampa Field Office
501 East Polk Street
Room 1000
Tampa, Florida 33602

   Re: Terry v. City of Venice
     EEOC No. 511-2019-01892

To whom it may concern:

  Please be advised that the undersigned represents the Respondent City of Venice (hereinafter "City" or Respondent) with regard to the charge filed by Ruth Terry (hereinafter "Terry" or "Charging Party") on or about April 17, 2019. The Respondent emphatically denies the Charging Party's allegations and requests that the Commission issue a finding that her charge of discrimination has no merit.

  This position statement is intended to be the Respondent's summary reply to the allegations raised in the above-referenced charge. It is not intended to be an exhaustive treatment of any and all evidence that may be available to the Respondent, and it should not be interpreted to suggest that the Respondent has completed all investigations it may wish to conduct in this matter. Further, this reply is not intended to raise all legal theories and/or defenses which the Respondent may ultimately raise in this case. The Respondent reserves the right to alter, amend, or supplement this statement if new or additional information is alleged or discovered or for other reasons. This position statement is provided to the Commission solely for the investigation of the above-referenced charge and with the understanding that this matter will remain confidential and will not be disclosed for any other purpose, other than those purposes provided for by law.

## I. __Nature of Charges__

  On or about April 17, 2019, Terry filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that she has been discriminated against on the basis of her race (African American), sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964.

Miami • Orlando • Tallahassee • Tampa

## II.   **Factual Background**

The City of Venice employs approximately 50 law enforcement officers in its police department. Charging party alleges she is African American. There is one other African American officer in the department. The Venice Police Department has a diverse work force including employees who are African American, White, Hispanic, and Asian, as well as employees of both genders. The City of Venice is proud to consider itself an equal opportunity employer.

Although only two officers are African American/Black, this constitutes 4% of the work force. According to the U.S. Census Bureau, African Americans only make up .8% of the Venice population. Therefore, the percentage of minority officers exceeds its representation within the community. There have been other black officers employed within the department. For example, another black male hired in 2015, who voluntarily resigned from his employment in 2016.

Charging party alleges no black officers are in supervisory roles however, that is simply a function of the fact that there were no black applicants for the positions over the last few years. There have been three promotions since 2015 from Officer to Sergeant, as a result from two promotional exams. One promotion occurred in 2016. However, no black officers applied to take part in the promotional process from which that roster was created. There was another posting for Sergeant in 2017, however no black officers applied to participate in this promotional process. With regard to the position of Lieutenant, since 2015 there has been no black applicant for the position of Lieutenant.

First, it is somewhat unclear as to exactly what Charging Party is alleging. She clearly is alleging race discrimination and retaliation. The charge also has the box "sex" checked. Yet, there is no allegations in the particulars of the charge that reference that issue. On the other hand, the particular of the charge references age discrimination, but the box for "age" is not checked. Regardless of the specific legal violations which are being alleged, the facts set forth below will establish that there is no basis for any claim.

The essence of Charging party's claim is that she was given a three-day suspension without pay. The basis for the three-day suspension was the fact that Ruth Terry, who is a law enforcement officer with the City serving in the capacity of a school resource officer. was ordered to work the City's annual holiday parade on November 24, 2018. Terry had advised she was not able to attend because she had a hair appointment. She was then notified that this was not an acceptable reason for failing to comply with an order to work, and that she was expected to report for duty as ordered. She failed to report as ordered.

Captain Eric Hill, who was a lieutenant at the time, was asked to look into the matter. He prepared a complaint form which sets out his finding and conclusions. Attached as Exhibit 1 is Captain Hill's narrative findings, as well as his finding that she violated departments SOP's by failing to report for duty and insubordination. Along with his narrative he attached the various emails and communications which relate to his findings.

In accordance with department policy, a disciplinary charge was prepared and Officer Terry had the opportunity for a pre-determination meeting with the Chief. See Exhibit 2. Officer

Terry attended a pre-determination meeting along with her attorney. Having heard no new information to excuse Officer Terry's failure to report for duty as directed, the Chief proceeded to issue the three-day suspension.

Counsel for Officer Terry did write a letter alleging that Charging Party was treated differently from other officers, specifically Officer Long. It was alleged that Officer Long had a pattern for calling in sick on Mondays after football games and routinely showing up late to work. Of course, that allegation is not comparable to Officer Terry's failure to work as directed for the City's annual parade. Nevertheless, Captain Hill did review the allegations to determine if there was any merit to them. Attached as Exhibit 3 is Captain Hill's investigation, along with the time records he reviewed. He concluded that the allegations of a pattern of sick leave abuse and tardiness was unfounded. Indeed, he found Officer Long had the best attendance record of all the other school resource officers including Officer Terry. The allegation that another officer was being treated better than the Charging Party is not supported by the evidence.

It is interesting to note that the allegation of retaliation is that the protected activity upon on which they rely, is the attorney's letter alleging that Officer Long, who is a male, was being treated differently. However, the recommendation to give Officer Terry a three-day suspension was already presented before that concern was ever raised. Therefore, the decision to suspend Officer Terry could not have been in retaliation for any complaint of discrimination which was raised by her counsel.

To the extent the charge alleges that was she denied due process by the City in the course of issuing discipline, that is irrelevant to the issue of discrimination. More importantly, she was not denied due process. She was advised of the allegations against her, given the opportunity for a pre-determination hearing, she was represented by counsel, and once the decision was made to suspend her for three-days, she exercised her right under City policy to appeal the decision to the City Manager. The hearing pursuant to City policy was to be held on May 14. However, at the request of opposing counsel on the day of the hearing, that hearing had to be postponed and is in the process of being rescheduled. So, there has been absolutely no violation of due process.

Regarding the "Garrity" issue, there was no basis to provide any such notice to the Charging Party. There was no internal affairs investigation and she was not interviewed. The facts were clearly undisputed, thereby obviating the need for any formal investigation. Absent an interview of the Charging Party, there is no basis for issuing Garrity warnings. Of course, as with the due process issue, the issue whether or not Garrity warnings should have been issued is not an issue for determination the EEOC.

Charging Party continues to serve as a police officer with the Venice Police Department and receives her full pay and benefits accordingly.

## III.    Legal Analysis

Terry bears the ultimate burden of establishing that she suffered an adverse action that was motivated by intentional discriminatory animus. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997. The Eleventh Circuit uses a three-part burden shifting analysis. In order to go forward on

her discrimination claims, Terry must initially meet her burden to establish a *prima facie* case of discrimination. <u>Id.</u> If Terry can establish a *prima facie* claim, the burden shifts to the City to articulate a legitimate nondiscriminatory reason for its actions. <u>Id.</u> After the City offers a legitimate nondiscriminatory reason for its actions, the burden then shifts back to Terry, who must meet her ultimate obligation of proving that the reason for the adverse action was pretext for discrimination. <u>Id.</u>

Charging Party's discrimination claims fail both because she cannot establish her *prima facie* burden to state a claim of discrimination, and because she cannot rebut the City's legitimate nondiscriminatory reason for its actions with evidence of pretext.

A.   <u>Terry has not established a *prima facie* case of race age, or gender discrimination.</u>

Terry's charge contains a claim for race discrimination under Title VII. To establish a *prima facie* case for race discrimination, Terry must make four showings (1) she is a member of a protected class or classes; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was treated different from similarly situated non-minority employees.

There is no dispute that as an African American, Terry is a member of a protected class. Terry, however, fails to carry her burden of establishing a *prima facie* case for her discrimination claims because she failed to show that the City has treated similarly situated employees who are not members of Terry's class more favorably.

The only allegation she presented to the City of any disparate treatment was that of Officer Bill Long. As set forth above in the facts, upon a review of the records, the fact is that Officer Bill Long was not treated differently. His records show no basis to find an abuse of leave. More importantly, this situation is not comparable in any event. The City's annual holiday parade is an "all hands-on deck" situation. Officer Long did not refuse a direct order to work during the holiday parade.

Furthermore, all officers were directed to work the parade. This included male officers, white officers, and younger officers. So, all department officers were treated in a similar fashion.

B.   <u>Terry did not rebut the City's legitimate nondiscriminatory reason for the three-day suspension.</u>

Assuming arguendo that Terry can initially make out prima facie of discrimination, the City has articulated a non-discriminatory reason for issuing Officer Terry a three-day suspension.

As set forth above, Officer Terry was directed to work the City's annual holiday parade. She was not excused from this order, and she failed to work the parade as directed. This unequivocally is misconduct and insubordinate when she failed to report to work as directed.

Clearly this is sufficient to satisfy the City's burden to present a non-discriminatory, legitimate reason for the suspension.

Terry has not demonstrated that the City's legitimate nondiscriminatory reason was a cover up for discrimination. She can show pretext by demonstrating "such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions" in the proffered reason for the employment action so that a reasonable factfinder could find them unworthy of credence. Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1348 (11th Cir.2007). "However, a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). Accordingly, it is not enough to "*dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." Id. at 519. (emphasis in original). Moreover, the courts are "not in the business of adjudging whether employment decisions are prudent or fair." Instead, the court's "sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999).

Terry has not presented any evidence to overcome the City's legitimate nondiscriminatory reason for her suspension. Charging Party's discrimination claims is founded on nothing but bare-bone assertions, which does not prove pretext.

### C.  Any claim of retaliation is without merit

Charging Party also alleges retaliation. In order to establish a retaliation claim she has to establish she engaged in protected activity and that some adverse action was taken because of that protected activity. The only protected activity Charging Party seems to assert is the letter from her attorney claiming that Officer Terry was being treated differently than Officer Bill Long. Even if that is protected activity, there no evidence of any adverse action taken against her because of that activity. The allegation of disparate treatment was only presented after the decision was made to issue the three-day suspension. Therefore, the City could not issue the three-day suspension in retaliation for any such protected activity.

## IV.  **Conclusion**

In view of the forgoing, Terry's assertion of discrimination is without basis. She has failed to establish a *prima facie* case of discrimination, and in any event, there is no legally sufficient evidentiary basis to find that her charge has merit. Further she has no evidence that would show that the City's proffered reason for its employment decision was pretextual, Therefore, her charge of discrimination should be dismissed with a finding of "no cause."

Sincerely,

Mark E. Levitt

| VENICE POLICE DEPARTMENT | | | IA/SR/SI Complaint No. |
|---|---|---|---|
| CITIZEN/POLICE COMPLAINT FORM | | | IA-2018-013 |

| Person Complained Against | Rank/Class | PID # | Unit |
|---|---|---|---|
| Ruth Terry | Officer | 279 | School Resource Officer |

| Complainant | Home Address | Home Phone Number |
|---|---|---|
| Lt. Eric Hill | Place of Employment | Work Phone Number 941-882-7582 |

| Date/Time of Occurrence | Location of Occurrence |
|---|---|
| 11/24/18 @ 1700 hours | Nokomis Ave @ Milan Ave |

| Witness Name | Home Address | Home Phone Number |
|---|---|---|
| Sgt. Keith Quick Sgt. Rob Goodson | Place of Employment | Work Phone Number |

**Details of Complaint, Additional Witnesses, etc.**

On 11/18/2018, SRO Ruth Terry was ordered to work the annual holiday parade on 11/24/2018 starting at 1700 hours, in the manner required by FOP contract (See Sgt. Quick's email). Upon being ordered, Terry voiced her intent was to refuse to comply with the order, telling Sgt. Goodson that she had a hair appointment. She was notified that this was not an acceptable reason for failing to comply with an order to work, and that she was expected to report for duty as ordered. She failed to report for duty as ordered and failed to answer her cell phone and/or return voicemails.

Prior to the event Sgt. Quick sent an email out to all officers requesting them to voluntarily sign-up, but letting them know that on 11/18 he would be ordering Officers to work any remaining vacant positions. Unfortunately, not enough volunteered and it was necessary to order ten (10) officers to work the event. Ruth Terry was among those officers ordered to work the event. Sgt. Quick gave all the affected officers notice of the ordered overtime via email on 11/18. Terry replied to his email by indicating that she was going to be out of town and was not going to change her plans in order to comply with the order.

The holiday parade always occurs on the Saturday following Thanksgiving and is our largest special event of the year. It usually requires every off-duty officer to work the event in order to adequately provide for public safety. In fact, this date is one of the three days a year that are designated as a maximum deployment date on the work schedule. Supervisors are not supposed to approve any time off on maximum deployment dates. I contacted her direct supervisor, Sgt. Goodson and learned that he had not approved leave for her on 11/24. Sgt. Goodson subsequently met with her and she informed him that she had a hair appointment in St. Petersburg. He informed her she was still subject to the order to work and she conveyed her intention not to follow the order. He relayed this to me and I asked both him and Sgt. Quick to again codify the order to work in an email.

This year's holiday parade was especially challenging due to the roadway construction related to the downtown beautification project that required an alternate parade route. This altered route created additional traffic and pedestrian safety concerns and required additional staffing that in years past. Due to her refusal to work, we had to redirect officers from other assignments to cover her assigned post.

<u>SRO Ruth Terry Violated the following policies and/or procedures:</u>

SOP 114.IV.A.5- Failure to Report for Duty

SOP 114.IV.A.17 – Insubordination



City Rules and Regulation, Group Two Offense, #14 – Insubordination or refusal to perform work assigned or to comply with written or verbal instructions of the supervisor or management.

Attachments:

-Memo from Sgt. Quick

-Memo from Sgt. Goodson

- Various e-mails between Sgt. Goodson, Sgt. Quick and SRO Terry

| Date/Time Complaint Received | Name of Person Recording Complaint | Unit |
|---|---|---|
| 11/24/18 1700 | Lt. Eric Hill | Administration |
| Date/Time Forwarded for Investigation | Name of Investigator | Unit |
| 11/24/18 1700 | Lt. Eric Hill | Administration |
| Date/Time Investigation Completed | Signature of Investigator | Unit |
| 12/05/18 | LT Ett 263 | Administration |
| Date/Time Complainant Notified | Signature of Receiving Person | Unit |
| N/A | N/A | |
| Date/Time Employee Received Copy | Signature of Employee | Unit |
| 22.15/1457 | XT | SRo |

RECOMMENDED COMPLAINT DISPOSITION

Date: 12/05/18     Supervisor's Printed Name & Signature: LT Ett 267

☐ Other Misconduct   ☐ Exonerated   ☐ Unfounded   ☐ Not Sustained   (X) Sustained

| Reviewed by | With findings of the Investigator | | Signature |
|---|---|---|---|
| | I Concur | Do not Concur (see attached report) | |
| Lieutenant- N/A | N/A | | |
| Captain- N/A | N/A | | |
| Chief | ✓ | | |

Revised: 03.24.14





# CITY OF VENICE
## POLICE DEPARTMENT

TOM MATTMULLER ✶ Chief

TO:   Lt. Eric Hill #263

FROM:   Sgt. Keith Quick #340

DATE:   11/26/18

SUBJECT:   Holiday Parade Ordering (Ruth Terry #279)

As requested, please accept this memo as an accounting of actions relative to the mandatory ordering of Ofc. Ruth Terry to work the Holiday Parade event scheduled for November 24, 2018.

For the 2018 Holiday Parade, I was assigned as the coordinating supervisor for the event responsible for the planning and allocation of resources/personnel for the event as it pertains the involvement of the Venice Police Department. This year's event was particularly challenging as we were required to utilize an alternate route due to an ongoing construction project in the downtown area. This resulted in significant changes in allocation of personnel as well as safety considerations for the attendees of the parade event. The alternate route also proved to be personnel intensive requiring maximum allocation of police personnel to facilitate.

The parade positons were posted for voluntary sign-up to all sworn personnel on November 12, 2018 at approximately 3:00pm. This was posted in the ISElink system and followed by an email to all personnel advising that any open spots requiring a mandatory order for fulfillment would be ordered on November 18, 2018 at 8:00am (see included email). This event is a maximum deployment date for the Holiday Parade event in which historically, no approved time off is to be granted due to high volume of personnel required to work events on these dates.

In response to the email on November 12, 2018, I received an email from Ofc. Terry at approximately 3:21 pm stating to me that she was going to be out of town during the time of the parade and not available to work the event citing an appointment that was made a month prior. Based on her statement, it was my perception that she had made arrangements precluding her from the event beyond my purview. I replied back in jest stating "unacceptable" and it is not common to have approved time off during this event, then telling her to enjoy her time off. This email was posed to me as a statement, not a request to be excused from the event as such request would need to be made through Ofc. Terry's chain of command. It should be noted my acknowledgement of her statement would in no way constitute permission or approval of time off for the event. Ofc. Terry is assigned to support services and under the charge of Sgt. Goodson. My current assignment is with the patrol division and in no conceivable scenario would a time of request or approval be routed through me for a member of support services. (See included email)

**Keith Quick**

| | |
|---|---|
| **From:** | Keith Quick |
| **Sent:** | Monday, November 12, 2018 3:12 PM |
| **To:** | VPD Sworn Officers |
| **Subject:** | Holiday Parade Detail Sign-Up |

To all,

It is indeed that time of year again that we are approaching the Holiday Parade scheduled for November 24, 2018. Please consider signing up for the remaining 1500 & 1700 positions posted in ISELink. There are also several spots open for anyone coming off shift at 1900 if able to help. We will look at the sign ups on Sunday November 18th and depending on staffing needed, make necessary mandatory orderings by 8am on the 18th. Please sign up! Thanks



**SERGEANT KEITH QUICK**
**VENICE POLICE DEPARTMENT**
DAY SHIFT "B" SQUAD

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

## Keith Quick

**From:** Keith Quick
**Sent:** Monday, November 12, 2018 3:29 PM
**To:** Ruth Terry
**Subject:** RE: Holiday Parade Detail Sign-Up

Unacceptable lol.  Enjoy your time off!



## SERGEANT KEITH QUICK
## VENICE POLICE DEPARTMENT
### DAY SHIFT "B" SQUAD

### 1350 RIDGEWOOD AVENUE
### VENICE, FL 34292

### CELL: 941-650-7598
### EMAIL: KQUICK@VENICEGOV.COM

### SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

**From:** Ruth Terry
**Sent:** Monday, November 12, 2018 3:21 PM
**To:** Keith Quick <KQuick@Venicegov.com>
**Subject:** Re: Holiday Parade Detail Sign-Up

I will not be in town, have an appointment that was made a month ago. Sorry

Get Outlook for iOS

**From:** Keith Quick
**Sent:** Monday, November 12, 2018 3:11:43 PM
**To:** VPD Sworn Officers
**Subject:** Holiday Parade Detail Sign-Up

1

To all,

It is indeed that time of year again that we are approaching the Holiday Parade scheduled for November 24, 2018.  Please consider signing up for the remaining 1500 & 1700 positions posted in ISELink.  There are also several spots open for anyone coming off shift at 1900 if able to help.  We will look at the sign ups on Sunday November 18th and depending on staffing needed, make necessary mandatory orderings by 8am on the 18th.  Please sign up!  Thanks



**SERGEANT KEITH QUICK**
**VENICE POLICE DEPARTMENT**
**DAY SHIFT "B" SQUAD**

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

**Keith Quick**

| | |
|---|---|
| **From:** | Keith Quick |
| **Sent:** | Sunday, November 18, 2018 10:28 AM |
| **To:** | John Majka; Artem Lyashenko; Kenite Webb; Benjamin Neff; Erin Skaggs; Kristen Kimson; Ruth Terry; Mathieu Navajas; Seth Kenny; Scott MacNiven |
| **Cc:** | Eric Hill; Mike Rose |
| **Subject:** | Holiday Parade Mandatory Order Personnel |

To all,

If you are receiving this email you have been mandatorily ordered to work a parade position in the 2018 Holiday parade event on November 24, 2018. This event is the single most personnel intensive event of the year and literally has required every available personnel resource this year to accomplish. Although it is never exciting to be ordered to an overtime assignment, especially during the holidays, please know that I am most appreciative of your presence at the event and respect the sacrifices that are made to fulfill this assignment. With that being said, please refer to the ISE Link schedule for your start times. The Parade Ops plan along with your assignments and action plan are being completed and will be forwarded to the Parade Detail as soon as completed. Again, thank you all for your understanding and have a safe and enjoyable Thanksgiving Holiday!!



**SERGEANT KEITH QUICK**
**VENICE POLICE DEPARTMENT**
**DAY SHIFT "B" SQUAD**

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

**Keith Quick**

| | |
|---|---|
| **From:** | Keith Quick |
| **Sent:** | Sunday, November 18, 2018 6:10 PM |
| **To:** | Ruth Terry |
| **Cc:** | Robert W. Goodson; Mike Rose |
| **Subject:** | Re: Holiday Parade Mandatory Order Personnel |

And now I remember that conversation and apologize for my forgetfulness.

Sergeant Keith Quick
Venice Police Department
Days "B" Squad
Traffic Homicide Unit - Field Training Unit

**From:** Ruth Terry
**Sent:** Sunday, November 18, 2018 6:08:55 PM
**To:** Keith Quick
**Cc:** Robert W. Goodson; Mike Rose
**Subject:** Re: Holiday Parade Mandatory Order Personnel

It is unfortunate that I have to write this email after I advised I would not be in town on November 24th. That has not changed and will not change.

Before it becomes a bigger mess than it is, I will be out of town on Saturday, November 24th and cannot assist coverage for this detail.

Get Outlook for iOS

**From:** Keith Quick
**Sent:** Sunday, November 18, 2018 10:28:14 AM
**To:** John Majka; Artem Lyashenko; Kenite Webb; Benjamin Neff; Erin Skaggs; Kristen Kimson; Ruth Terry; Mathieu Navajas; Seth Kenny; Scott MacNiven
**Cc:** Eric Hill; Mike Rose
**Subject:** Holiday Parade Mandatory Order Personnel

To all,

If you are receiving this email you have been mandatorily ordered to work a parade position in the 2018 Holiday parade event on November 24, 2018. This event is the single most personnel intensive event of the year and literally has required every available personnel resource this year to accomplish. Although it is never exciting to be ordered to an overtime assignment, especially during the holidays, please know that I am most appreciative of your presence at the event and respect the sacrifices that are made to fulfill this assignment. With that being said, please refer to the ISE Link schedule for your start times. The Parade Ops plan along with your assignments and action plan are being completed and will be forwarded to the Parade Detail as soon as completed. Again, thank you all for your understanding and have a safe and enjoyable Thanksgiving Holiday!!



## Sergeant Keith Quick
## Venice Police Department
### Day Shift "B" Squad

1350 Ridgewood Avenue
Venice, FL 34292

Cell: 941-650-7598
Email: KQUICK@VENICEGOV.COM

Shift Hours: 07:00 – 19:00 ("B" Rotation)

 

PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.

**Keith Quick**

| | |
|---|---|
| **From:** | Keith Quick |
| **Sent:** | Monday, November 19, 2018 1:41 PM |
| **To:** | Ruth Terry |
| **Cc:** | Robert W. Goodson; Mike Rose; Eric Hill |
| **Subject:** | Re: Holiday Parade Mandatory Order Personnel |

Ruth,

After speaking with Lt. Hill and Sgt. Goodson I was advised that there was no preapproved leave granted for the date of the holiday parade. At this time the mandatory order for you to work the parade detail is in effect.

Sergeant Keith Quick
Venice Police Department
Days "B" Squad
Traffic Homicide Unit - Field Training Unit

**From:** Ruth Terry
**Sent:** Sunday, November 18, 2018 6:08:55 PM
**To:** Keith Quick
**Cc:** Robert W. Goodson; Mike Rose
**Subject:** Re: Holiday Parade Mandatory Order Personnel

It is unfortunate that I have to write this email after I advised I would not be in town on November 24th. That has not changed and will not change.

Before it becomes a bigger mess than it is, I will be out of town on Saturday, November 24th and cannot assist coverage for this detail.

Get Outlook for iOS

**From:** Keith Quick
**Sent:** Sunday, November 18, 2018 10:28:14 AM
**To:** John Majka; Artem Lyashenko; Kenite Webb; Benjamin Neff; Erin Skaggs; Kristen Kimson; Ruth Terry; Mathieu Navajas; Seth Kenny; Scott MacNiven
**Cc:** Eric Hill; Mike Rose
**Subject:** Holiday Parade Mandatory Order Personnel

To all,

If you are receiving this email you have been mandatorily ordered to work a parade position in the 2018 Holiday parade event on November 24, 2018. This event is the single most personnel intensive event of the year and literally has required every available personnel resource this year to accomplish. Although it is never exciting to be ordered to an overtime assignment, especially during the holidays, please know that I am most appreciative of your presence at the event and respect the sacrifices that are made to fulfill this assignment. With that being said, please refer to the ISE Link schedule for your start times. The Parade Ops plan along with your assignments and action plan are being completed and will be forwarded to the Parade Detail as soon as completed. Again, thank you all for your understanding and have a safe and enjoyable Thanksgiving Holiday!!

1



## SERGEANT KEITH QUICK
## VENICE POLICE DEPARTMENT
### DAY SHIFT "B" SQUAD

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

2



Detective Bureau

# CITY OF VENICE
# POLICE DEPARTMENT

TOM MATTMULLER ✶ Chief

TO:        Lt. Eric Hill #263

FROM:    Sgt. Rob Goodson #367   *RG #367*

DATE:    November 26, 2018

SUBJECT:   SRO Terry - Refusal to work special event as ordered on 11/24/18

On Sunday, 11/18/18, I received notice via email that SRO Terry, along with other officers, were ordered to work on Saturday, 11/24/18, by Sgt. Quick to fulfil manning requirements for the Holiday Parade special event. SRO Terry responded, via email to Sgt. Quick, that she had previously advised that she would be out-of-town and not available to work the detail. As the direct supervisor for SRO Terry, I was not aware of any such notice from her regarding her availability on 11/24/18.

On Monday, 11/19/18, I spoke with Sgt. Quick, Lt. Hill, and Capt. Rose and confirmed that no supervisor had released her from the requirement for sworn officers to be available on the date of the special event. I then met with SRO Terry at her office at Venice High School and asked about her email refusal to work as ordered. SRO Terry said that she did not intend to work the event as she had scheduled a hair appointment for 11/24/18 at 4:00 pm in St. Petersburg. SRO Terry said she made the appointment on 10/19/18 before the detail posted on 10/22/18. I advised that the event was posted to allow officers to sign-up for the detail but the date was marked in red in our scheduling system as notice of the annual special event that requires all sworn officers to be available with any leave to require supervisor approval. SRO Terry said that she did not consult her work schedule when making her appointment as it was on her pass day. I advised her that she was still under order to work the detail as scheduled and suggested the appointment be moved.

I then returned to the station and followed up with an email to SRO Terry reiterating the order to work the detail on 11/24/18. SRO did not respond to the email or to calls placed to her work and personal cell phones on 11/20/18. She was off duty on scheduled vacation and holidays from 11/21 – 11/23.

On 11/24/18, SRO Terry did not report to briefing for the detail. I immediately placed calls to both work and personal cell phones, leaving messages requesting a return call to which there was no response.

**Robert W. Goodson**

| | |
|---|---|
| **From:** | Keith Quick |
| **Sent:** | Monday, November 12, 2018 3:12 PM |
| **To:** | VPD Sworn Officers |
| **Subject:** | Holiday Parade Detail Sign-Up |

To all,

It is indeed that time of year again that we are approaching the Holiday Parade scheduled for November 24, 2018. Please consider signing up for the remaining 1500 & 1700 positions posted in ISELink. There are also several spots open for anyone coming off shift at 1900 if able to help. We will look at the sign ups on Sunday November 18th and depending on staffing needed, make necessary mandatory orderings by 8am on the 18th. Please sign up! Thanks



"Our Citizens, Our Community, Our Commitment"

## SERGEANT KEITH QUICK
## VENICE POLICE DEPARTMENT
### DAY SHIFT "B" SQUAD

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.

**Robert W. Goodson**

| | |
|---|---|
| **From:** | Robert W. Goodson |
| **Sent:** | Monday, November 19, 2018 10:28 AM |
| **To:** | Ruth Terry |
| **Subject:** | RE: Holiday Parade Mandatory Order Personnel |

We need to meet to discuss.  I'll be available at the station after school.

Sergeant Rob Goodson
Detective Bureau
Venice Police Department

**From:** Ruth Terry <RTerry@Venicegov.com>
**Sent:** Sunday, November 18, 2018 6:09 PM
**To:** Keith Quick <KQuick@Venicegov.com>
**Cc:** Robert W. Goodson <RGoodson@Venicegov.com>; Mike Rose <MRose@Venicegov.com>
**Subject:** Re: Holiday Parade Mandatory Order Personnel

It is unfortunate that I have to write this email after I advised I would not be in town on November 24th. That has not changed and will not change.

Before it becomes a bigger mess than it is, I will be out of town on Saturday,November 24th and cannot assist coverage for this detail.

Get Outlook for iOS

**From:** Keith Quick
**Sent:** Sunday, November 18, 2018 10:28:14 AM
**To:** John Majka; Artem Lyashenko; Kenite Webb; Benjamin Neff; Erin Skaggs; Kristen Kimson; Ruth Terry; Mathieu Navajas; Seth Kenny; Scott MacNiven
**Cc:** Eric Hill; Mike Rose
**Subject:** Holiday Parade Mandatory Order Personnel

To all,

If you are receiving this email you have been mandatorily ordered to work a parade position in the 2018 Holiday parade event on November 24, 2018.  This event is the single most personnel intensive event of the year and literally has required every available personnel resource this year to accomplish.  Although it is never exciting to be ordered to an overtime assignment, especially during the holidays, please know that I am most appreciative of your presence at the event and respect the sacrifices that are made to fulfill this assignment.  With that being said, please refer to the ISE Link schedule for your start times.  The Parade Ops plan along with your assignments and action plan are being completed and will be forwarded to the Parade Detail as soon as completed.  Again, thank you all for your understanding and have a safe and enjoyable Thanksgiving Holiday!!



## SERGEANT KEITH QUICK
## VENICE POLICE DEPARTMENT
### DAY SHIFT "B" SQUAD

1350 RIDGEWOOD AVENUE
VENICE, FL 34292

CELL: 941-650-7598
EMAIL: KQUICK@VENICEGOV.COM

SHIFT HOURS: 07:00 – 19:00 ("B" ROTATION)

 

*PLEASE NOTE: THIS AGENCY IS A PUBLIC ENTITY AND IS SUBJECT TO CHAPTER 119, FLORIDA STATUTES, CONCERNING PUBLIC RECORDS. EMAIL COMMUNICATIONS ARE COVERED UNDER SUCH LAWS; THEREFORE, EMAIL SENT OR RECEIVED ON THIS ENTITY'S COMPUTER SYSTEM, INCLUDING YOUR EMAIL ADDRESS, MAY BE DISCLOSED TO THE PUBLIC AND MEDIA UPON REQUEST. IF YOU DO NOT WANT YOUR EMAIL ADDRESS RELEASED TO A PUBLIC RECORDS REQUEST, DO NOT SEND ELECTRONIC MAIL TO THIS ENTITY. INSTEAD, CONTACT THIS OFFICE BY PHONE OR IN WRITING.*

## Robert W. Goodson

| | |
|---|---|
| **From:** | Robert W. Goodson |
| **Sent:** | Monday, November 19, 2018 1:40 PM |
| **To:** | Ruth Terry |
| **Cc:** | Eric Hill |
| **Subject:** | Holiday Parade Mandatory Order Personnel |

SRO Terry,

Please be advised that you are ordered to work on November 24, 2018 to meet the department needs for the special event as noted below and as has been recorded on your schedule.

Thank you,

Sergeant Rob Goodson
Detective Bureau
Venice Police Department
Phone 941-882-7583
Cell 941-650-7599
Fax 941-480-3240
rgoodson@venicegov.com



**From:** Keith Quick
**Sent:** Sunday, November 18, 2018 10:28:14 AM
**To:** John Majka; Artem Lyashenko; Kenite Webb; Benjamin Neff; Erin Skaggs; Kristen Kimson; Ruth Terry; Mathieu Navajas; Seth Kenny; Scott MacNiven
**Cc:** Eric Hill; Mike Rose
**Subject:** Holiday Parade Mandatory Order Personnel

To all,

If you are receiving this email you have been mandatorily ordered to work a parade position in the 2018 Holiday parade event on November 24, 2018. This event is the single most personnel intensive event of the year and literally has required every available personnel resource this year to accomplish. Although it is never exciting to be ordered to an overtime assignment, especially during the holidays, please know that I am most appreciative of your presence at the event and respect the sacrifices that are made to fulfill this assignment. With that being said, please refer to the ISE Link schedule for your start times. The Parade Ops plan along with your assignments and action plan are being completed and will be forwarded to the Parade Detail as soon as completed. Again, thank you all for your understanding and have a safe and enjoyable Thanksgiving Holiday!!

# VENICE POLICE DEPARTMENT
# DISCIPLINARY CHARGE SHEET

**Complaint Number**
114 2018-013

| Name of Charged Employee: Ruth Terry | Rank Officer | PID # 279 | Unit School Resource Officer |
|---|---|---|---|

| Name of Charging Person: Eric Hill | Rank Lieutenant | PID # 263 | Unit Administration |
|---|---|---|---|

| Date & Time of Offense: 11/24/2018 @ 1700 hours | Location of Offense: Milan St @ Nokomis Ave |
|---|---|

VIOLATION SUMMARY AND SPECIFIC RULE, REGULATION, PROCEDURE, DIRECTIVE, AND/OR ORDER VIOLATED INCLUDING TITLE AND NUMERICAL REFERENCE

On 11/18/2018, SRO Ruth Terry was ordered to work the annual holiday parade on 11/24/2018 starting at 1700 hours, in the manner required by FOP contract. Upon being ordered, Terry voiced her intent was to refuse to comply with the order, telling Sgt. Goodson that she had a hair appointment. She was notified that this was not an acceptable reason for failing to comply with an order to work, and that she was expected to report for duty as ordered. She failed to report for duty as ordered and failed to answer her cell phone and/or return voicemails.

Violations:
SOP 114.IV.A.5- Failure to Report for Duty
SOP 114.IV.A.17 – Insubordination
City Rules and Regulation, Group Two Offense, #14 – Insubordination or refusal to perform work assigned or to comply with written or verbal instructions of the supervisor or management.

THIS DISCIPLINARY SANCTION IS BASED ON THE NATURE OF THE OFFENSE COMMITTED, THE CIRCUMSTANCES AND THE MANNER UNDER WHICH IT WAS COMMITTED, AND THE EMPLOYEE'S RECORD.

| RECOMMENDED DISCIPLINARY SANCTION | DATE | SIGNATURE |
|---|---|---|
| 3-day suspension on dates TBD by the department that least impacts the school calendar and prohibition from working any FOP Off-Duty details during any pay period that suspension days occur. | 12/05/2018 | LT 𝓢𝓐 263 |

| REVIEWED BY | WITH THE ACTION TAKEN BY THE SUBORDINATE MEMBER | | SIGNATURE |
|---|---|---|---|
| | I concur | I DO NOT CONCUR (see attached report) | |
| Chief Tom Mattmuller | ✓ | | Chief Dom McGih |

PREDETERMINATION CONFERENCE-LIST ALL PERSONS PRESENT: ☐ CHECK IF RECORDED
Chief Mattmuller        Smigulyn Mack - Majka PA
Capt Hill
SRO Terry

DATE: 1/23/19

SIGNATURE: Chief Dom McGih

FINAL DISCIPLINARY SANCTION DETERMINED BY THE POLICE CHIEF/DESIGNEE:
3 DAY SUSPENSION

DATE: 1/30/19

SIGNATURE: Chief Dom McGih

| DATE NOTIFIED: 2.21.19 | SIGNATURE OF CHARGED EMPLOYEE: 𝓡𝓣 |
|---|---|
| TIME NOTIFIED: 1455 | SIGNATURE OF NOTIFYING EMPLOYEE: CAPT 𝓢𝓐 263 |

| I ACKNOWLEDGE I RECEIVED WRITTEN NOTIFICATION OF THE COMPLAINT AND DISCIPLINARY SANCTION | DATE: | SIGNATURE OF CHARGED EMPLOYEE: |
|---|---|---|
| | TIME: | |

**EXHIBIT**
**2**



# CITY OF VENICE
## POLICE DEPARTMENT

Support Services

TOM MATTMULLER ✶ Chief

To: Chief Tom Mattmuller, Chief of Police

From: Capt. Eric Hill, Support Services Commander

Date: 01/25/2019

Subject: Allegations during Ruth Terry Pre-Disciplinary Hearing

      You asked me to look into a complaint raised by Officer Ruth Terry's representative during her pre-disciplinary hearing on 01/23/2018. Her representative alleged "disparate treatment" of Ofc. Terry and stated that there are "inconsistencies in how some officers are treated here at Venice PD". When you asked for an example, she alleged that supervisors knowingly take no disciplinary action against Officer Bill Long who has a pattern of calling in sick on Mondays after football games and routinely showing up late to work.

      Officer Bill Long became as a School Resource Officer (SRO) at Venice Elementary starting this school year. I reviewed his attendance record since this school year began and compared it to the other School Resource Officers. Ofc. Long has used fewer sick leave hours than all other School Resource Officers. Ofc. Terry has actually used the most sick leave at 57.5 hours, followed by Ofc. Morales at 37.5 hours, and finally Ofc. Long at 35 hours. Concerning patterns of sick leave use, Ofc. Long has called out sick twice on a Monday. However, Ofc. Terry has also called in sick twice on a Monday, and both Morales and Terry have called in sick immediately prior to or preceding a vacation. While I have no concerns about the attendance of any of the SRO's, it should be noted that Ofc. Long actually has the best attendance record of them all.

      Regarding tardiness, I have reviewed the data from the GPS unit located in Officer Long's assigned vehicle (91). With this technology, I can determine what time Officer Long arrives at his assigned school. Venice Elementary starts at 08:30 and he routinely arrives at approximately 08:00. There was only one incidence of him arriving after school began. There are no grounds to discipline Ofc. Long for tardiness.

      I have reviewed this complaint and determined the allegations of patterned sick-leave abuse and tardiness to be unfounded.

EXHIBIT

3

ehill

## Leave Hours Detail By Employee

Aug 13, 2018 - Jan 25, 2019

Branch: Police Department   Filter: All   Unit: All   Selected Employees Only

**PID**     **322**
**Employee**     **Long, Bill H**

| Date | Actual Times | Leave | Hours | Unpaid | Standby |
|------|-------------|-------|-------|--------|---------|
| Sep 3, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Sep 17, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Sep 21, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Sep 25, 2018 | 07:45-08:45 | Vacation | 01:00 | 00:00 | 00:00 |
| Oct 15, 2018 | 07:30-15:30 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Nov 2, 2018 | 07:45-15:45 | Vacation | 08:00 | 00:00 | 00:00 |
| Nov 11, 2018 | 08:00-16:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Nov 13, 2018 | 08:00-16:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Nov 21, 2018 | 07:45-15:45 | Vacation | 08:00 | 00:00 | 00:00 |
| Nov 22, 2018 | 07:30-15:30 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Nov 23, 2018 | 07:30-15:30 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 18, 2018 | 12:30-15:30 | Sick Leave | 03:00 | 00:00 | 00:00 |
| Dec 24, 2018 | 07:30-15:30 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 25, 2018 | 07:30-15:30 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 26, 2018 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 27, 2018 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 28, 2018 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 31, 2018 | 20:00-01:00 | Vacation | 00:00 | 05:00 | 00:00 |
| Jan 1, 2019 | 07:30-15:30 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Jan 2, 2019 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| Jan 3, 2019 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| Jan 4, 2019 | 07:30-15:30 | Vacation | 08:00 | 00:00 | 00:00 |
| | | **Total** | **156:00** | **05:00** | **00:00** |

**PID**     **388**
**Employee**     **Morales, Rodrigo**

| Date | Actual Times | Leave | Hours | Unpaid | Standby |
|------|-------------|-------|-------|--------|---------|
| Sep 3, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Oct 12, 2018 | 07:00-10:30 | Sick Leave | 03:30 | 00:00 | 00:00 |
| Oct 16, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Oct 18, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Nov 11, 2018 | 08:00-16:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Nov 19, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Nov 21, 2018 | 12:00-15:00 | Comp Time | 03:00 | 00:00 | 00:00 |
| Nov 22, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Nov 23, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 5, 2018 | 07:00-09:00 | Sick Leave | 02:00 | 00:00 | 00:00 |
| Dec 21, 2018 | 07:00-15:00 | Sick Leave | 08:00 | 00:00 | 00:00 |
| Dec 24, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 25, 2018 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Dec 26, 2018 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 27, 2018 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 28, 2018 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Dec 31, 2018 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Jan 1, 2019 | 07:00-15:00 | Holiday Not Worked | 08:00 | 00:00 | 00:00 |
| Jan 2, 2019 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Jan 3, 2019 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| Jan 4, 2019 | 07:00-15:00 | Vacation | 08:00 | 00:00 | 00:00 |
| | | **Total** | **152:30** | **00:00** | **00:00** |

ehill

## Leave Hours Summary By Employee

Aug 13, 2018 - Jan 25, 2019

Branch: Police Department   Filter: All   Unit: All   Selected Employees Only

| Employee | | Leave | | Hours | Unpaid | Standby |
|---|---|---|---|---|---|---|
| 322 | Long, Bill H | Holiday Not Worked | | 56:00 | 00:00 | 00:00 |
| | | Sick Leave | | 35:00 | 00:00 | 00:00 |
| | | Vacation | | 65:00 | 05:00 | 00:00 |
| | | | Total | 156:00 | 156:00 | 156:00 |
| 388 | Morales, Rodrigo | Comp Time | | 03:00 | 00:00 | 00:00 |
| | | Holiday Not Worked | | 56:00 | 00:00 | 00:00 |
| | | Sick Leave | | 37:30 | 00:00 | 00:00 |
| | | Vacation | | 56:00 | 00:00 | 00:00 |
| | | | Total | 152:30 | 152:30 | 152:30 |
| 279 | Terry, Ruth M | Comp Time | | 08:00 | 00:00 | 00:00 |
| | | Holiday Not Worked | | 64:00 | 00:00 | 00:00 |
| | | No Pay | | 05:00 | 00:00 | 00:00 |
| | | Sick Leave | | 57:30 | 00:00 | 00:00 |
| | | Vacation | | 80:00 | 00:00 | 00:00 |
| | | | Total | 214:30 | 214:30 | 214:30 |
| | | **Total** Comp Time | | 11:00 | 00:00 | 00:00 |
| | | **Total** Holiday Not Worked | | 176:00 | 00:00 | 00:00 |
| | | **Total** No Pay | | 05:00 | 00:00 | 00:00 |
| | | **Total** Sick Leave | | 130:00 | 00:00 | 00:00 |
| | | **Total** Vacation | | 201:00 | 05:00 | 00:00 |
| | | | **Grand Total** | 523:00 | 05:00 | 00:00 |

SICK

| | MM | T | W | Th | F | S | S |
|---|---|---|---|---|---|---|---|
| 388 | | l | l | l | l | | l |
| 279 | ll | l | | ll | | | l |
| 322 | ll | l | l | l | | l | |

279- DEC 10TH · SICK ON MON FOLLOWING VACATION

388 DEC 21 - SICK ~~MON~~ FRI PRIOR TO VACATION

388 = RODRIGO MORALES
279 = RUTH TERRY
322 = BILL LONG

1/25/2019

*GPS:* [handwritten]

Address Report – Samsara

# Site Report for Venice Elementary - *SCHOOL HOURS: 930 - 3:15* [handwritten]

🔍

*VEHICLE # (91) - OFC. BILL LONG* [handwritten]

Tags ▾

17 of 142 visits match '91' from Aug 13, 2018 12:00 AM - Aug 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 91 | **Aug 31, 7:48 AM** | Aug 31, 3:46 PM | 7h 57m |
| 91 | Aug 30, 1:02 PM | Aug 30, 3:45 PM | 2h 43m |
| 91 | Aug 30, 7:52 AM | Aug 30, 12:05 PM | 4h 12m |
| 91 | Aug 29, 2:10 PM | Aug 29, 3:59 PM | 1h 48m |
| 91 | Aug 29, 7:49 AM | Aug 29, 11:21 AM | 3h 32m |
| 91 | Aug 28, 7:48 AM | Aug 28, 3:36 PM | 7h 47m |
| 91 | Aug 27, 8:09 AM | Aug 27, 3:36 PM | 7h 27m |
| 91 | Aug 27, 7:51 AM | Aug 27, 8:07 AM | 16m 35s |
| 91 | Aug 24, 7:46 AM | Aug 24, 3:36 PM | 7h 49m |
| 91 | Aug 23, 7:55 AM | Aug 23, 3:41 PM | 7h 45m |
| 91 | Aug 22, 7:53 AM | Aug 22, 3:41 PM | 7h 47m |
| 91 | **Aug 21, 7:50 AM** | Aug 21, 3:40 PM | 7h 50m |
| 91 | **Aug 20, 8:01 AM** | Aug 20, 3:40 PM | 7h 38m |
| 91 | **Aug 16, 7:47 AM** | Aug 16, 8:44 AM | 56m 13s |

Address Report – Samsara

# Site Report for Venice Elementary

🔍

91

Tags ▾

26 of 143 visits match '91' from Sep 1, 2018 12:00 AM - Sep 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 91 | Sep 28, 7:53 AM | Sep 28, 3:38 PM | 7h 45m |
| 91 | Sep 27, 7:50 AM | Sep 27, 3:38 PM | 7h 47m |
| 91 | Sep 26, 7:55 AM | Sep 26, 3:43 PM | 7h 48m |
| 91 | Sep 25, 8:50 AM | Sep 25, 3:39 PM | 6h 48m _ vac 0745-0845 |
| 91 | Sep 24, 7:47 AM | Sep 24, 3:36 PM | 7h 49m |
| 91 | Sep 20, 9:14 AM | Sep 20, 3:42 PM | 6h 28m |
| 91 | Sep 20, 7:47 AM | Sep 20, 8:58 AM | 1h 11m |
| 91 | Sep 19, 3:30 PM | Sep 19, 3:36 PM | 6m |
| 91 | Sep 19, 3:07 PM | Sep 19, 3:26 PM | 18m 46s |
| 91 | Sep 19, 7:47 AM | Sep 19, 2:54 PM | 7h 7m |
| 91 | Sep 18, 3:28 PM | Sep 18, 3:41 PM | 13m 22s |
| 91 | Sep 18, 2:58 PM | Sep 18, 3:04 PM | 5m 30s |
| 91 | Sep 18, 2:44 PM | Sep 18, 2:50 PM | 5m 58s |
| 91 | Sep 18, 12:13 PM | Sep 18, 2:43 PM | 2h 30m |

Address Report – Samsara

# Site Report for Venice Elementary

🔍

91                                                      Tags ▾

25 of 120 visits match '91' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 91 | Oct 31, 8:07 AM | Oct 31, 3:39 PM | 7h 32m |
| 91 | Oct 30, 8:01 AM | Oct 30, 3:36 PM | 7h 34m |
| 91 | Oct 29, 8:06 AM | Oct 29, 3:37 PM | 7h 31m |
| 91 | Oct 26, 7:59 AM | Oct 26, 3:37 PM | 7h 38m |
| 91 | Oct 25, 8:03 AM | Oct 25, 3:40 PM | 7h 37m |
| 91 | Oct 24, 7:59 AM | Oct 24, 3:32 PM | 7h 33m |
| 91 | Oct 23, 7:59 AM | Oct 23, 3:36 PM | 7h 36m |
| 91 | Oct 22, 7:57 AM | Oct 22, 3:36 PM | 7h 39m |
| 91 | Oct 19, 11:43 AM | Oct 19, 3:37 PM | 3h 54m |
| 91 | Oct 19, 8:41 AM | Oct 19, 11:40 AM | 2h 59m — *PROFESSIONAL DAY No School* |
| 91 | Oct 18, 4:42 PM | Oct 18, 4:47 PM | 4m 51s |
| 91 | Oct 18, 7:54 AM | Oct 18, 3:37 PM | 7h 43m |
| 91 | Oct 17, 7:56 AM | Oct 17, 3:35 PM | 7h 38m |
| 91 | Oct 16, 7:59 AM | Oct 16, 3:38 PM | 7h 38m |

# Site Report for Venice Elementary

🔍

91                                                                    Tags ▾

25 of 120 visits match '91' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 91 | Oct 5, 8:01 AM | Oct 5, 3:41 PM | 7h 40m |
| 91 | Oct 4, 7:54 AM | Oct 4, 3:38 PM | 7h 43m |
| 91 | Oct 3, 7:53 AM | Oct 3, 3:37 PM | 7h 44m |
| 91 | Oct 2, 7:54 AM | Oct 2, 3:35 PM | 7h 40m |
| 91 | Oct 1, 8:55 AM | Oct 1, 3:37 PM | 6h 42m |

Previous    1    2

# Site Report for Venice Elementary

🔍

91                                          Tags ▾

19 of 111 visits match '91' from Nov 1, 2018 12:00 AM - Nov 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▾ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 91 | Nov 30, 8:06 AM | Nov 30, 3:40 PM | 7h 33m |
| 91 | Nov 29, 8:02 AM | Nov 29, 3:35 PM | 7h 32m |
| 91 | Nov 28, 12:48 PM | Nov 28, 3:37 PM | 2h 49m |
| 91 | Nov 27, 7:55 AM | Nov 27, 3:35 PM | 7h 39m |
| 91 | Nov 26, 8:04 AM | Nov 26, 3:53 PM | 7h 49m |
| 91 | Nov 20, 8:09 AM | Nov 20, 3:32 PM | 7h 23m |
| 91 | Nov 19, 8:03 AM | Nov 19, 3:29 PM | 7h 26m |
| 91 | Nov 16, 8:01 AM | Nov 16, 3:33 PM | 7h 32m |
| 91 | Nov 15, 8:05 AM | Nov 15, 3:34 PM | 7h 29m |
| 91 | Nov 14, 8:06 AM | Nov 14, 3:36 PM | 7h 30m |
| 91 | Nov 12, 8:04 AM | Nov 12, 3:37 PM | 7h 33m |
| 91 | Nov 9, 4:49 PM | Nov 9, 8:20 PM | 3h 31m |
| 91 | Nov 9, 8:03 AM | Nov 9, 3:38 PM | 7h 35m |
| 91 | Nov 8, 7:57 AM | Nov 8, 3:34 PM | 7h 37m |

1/25/2019                                    Address Report – Samsara

# Site Report for Venice Elementary

🔍

91                                              Tags ▾

25 of 122 visits match '91' from Dec 1, 2018 12:00 AM - Dec 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 91 | Dec 21, 2:22 PM | Dec 21, 3:31 PM | 1h 9m |
| 91 | Dec 21, 12:04 PM | Dec 21, 1:18 PM | 1h 14m |
| 91 | Dec 21, 9:07 AM | Dec 21, 9:48 AM | 41m 19s — PROFESSIONAL DAY NO SCHOOL |
| 91 | Dec 20, 8:07 AM | Dec 20, 3:36 PM | 7h 29m |
| 91 | Dec 19, 8:02 AM | Dec 19, 3:36 PM | 7h 33m |
| 91 | Dec 18, 8:03 AM | Dec 18, 12:33 PM | 4h 29m |
| 91 | Dec 17, 8:07 AM | Dec 17, 3:41 PM | 7h 34m |
| 91 | Dec 14, 12:52 PM | Dec 14, 3:32 PM | 2h 40m |
| 91 | Dec 14, 10:54 AM | Dec 14, 12:24 PM | 1h 29m |
| 91 | Dec 14, 8:02 AM | Dec 14, 10:44 AM | 2h 42m |
| 91 | Dec 13, 7:53 AM | Dec 13, 3:35 PM | 7h 42m |
| 91 | Dec 12, 7:59 AM | Dec 12, 3:38 PM | 7h 39m |
| 91 | Dec 11, 5:44 PM | Dec 11, 7:25 PM | 1h 41m |
| 91 | Dec 11, 11:06 AM | Dec 11, 5:24 PM | 6h 17m |

1/25/2019

Address Report – Samsara

# Site Report for Venice Elementary

🔍

91                                          Tags ▾

25 of 122 visits match '91' from Dec 1, 2018 12:00 AM - Dec 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ⬇ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 91 | Dec 4, 10:56 AM | Dec 4, 11:48 AM | 51m 47s |
| 91 | Dec 4, 10:38 AM | Dec 4, 10:45 AM | 6m 51s |
| 91 | Dec 4, 8:13 AM | Dec 4, 10:36 AM | 2h 23m |
| 91 | Dec 3, 8:54 AM | Dec 3, 3:38 PM | 6h 43m |
| 91 | Dec 3, 8:05 AM | Dec 3, 8:35 AM | 30m 7s |

Previous   1   2

Address Report – Samsara

# Site Report for Venice Elementary

🔍

91

Tags ▾

14 of 93 visits match '91' from Jan 1, 2019 12:00 AM - Jan 25, 2019 10:03 AM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 91 | Jan 25, 8:01 AM | Jan 25, 10:03 AM | 2h 2m |
| 91 | Jan 24, 8:02 AM | Jan 24, 3:32 PM | 7h 29m |
| 91 | Jan 23, 8:03 AM | Jan 23, 3:38 PM | 7h 35m |
| 91 | Jan 22, 11:58 AM | Jan 22, 3:33 PM | 3h 34m |
| 91 | Jan 22, 7:51 AM | Jan 22, 9:51 AM | 2h |
| 91 | Jan 18, 7:33 AM | Jan 18, 3:36 PM | 8h 2m |
| 91 | Jan 17, 7:59 AM | Jan 17, 3:42 PM | 7h 43m |
| 91 | Jan 16, 8:01 AM | Jan 16, 3:36 PM | 7h 34m |
| 91 | Jan 15, 8:01 AM | Jan 15, 3:40 PM | 7h 39m |
| 91 | Jan 14, 8:01 AM | Jan 14, 3:36 PM | 7h 34m |
| 91 | Jan 11, 8:03 AM | Jan 11, 3:40 PM | 7h 37m |
| 91 | Jan 9, 7:35 AM | Jan 9, 3:42 PM | 8h 7m |
| 91 | Jan 8, 8:03 AM | Jan 8, 3:40 PM | 7h 36m |
| 91 | Jan 7, 8:07 AM | Jan 7, 3:36 PM | 7h 28m |

1/25/2019

# Site Report for Venice High   — HOURS  0730 - 2:15

🔍

VEHICLE # → (86) — RUTH TERRY

Tags ▾

27 of 76 visits match '86' from Aug 13, 2018 12:00 AM - Aug 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 86 | Aug 31, 12:01 PM | Aug 31, 2:15 PM | 2h 14m |
| 86 | Aug 31, 6:53 AM | Aug 31, 8:08 AM | 1h 14m |
| 86 | Aug 30, 12:55 PM | Aug 30, 1:58 PM | 1h 3m |
| 86 | Aug 30, 7:10 AM | Aug 30, 12:42 PM | 5h 32m |
| 86 | Aug 29, 6:56 AM | Aug 29, 2:04 PM | 7h 8m |
| 86 | Aug 28, 12:49 PM | Aug 28, 2:12 PM | 1h 23m |
| 86 | Aug 28, 7:13 AM | Aug 28, 12:41 PM | 5h 28m |
| 86 | Aug 27, 7:04 AM | Aug 27, 2:03 PM | 6h 59m |
| 86 | Aug 24, 12:25 PM | Aug 24, 2:15 PM | 1h 49m |
| 86 | Aug 24, 6:54 AM | Aug 24, 12:13 PM | 5h 19m |
| 86 | Aug 23, 11:38 AM | Aug 23, 2:02 PM | 2h 23m |
| 86 | Aug 23, 7:07 AM | Aug 23, 11:31 AM | 4h 23m |
| 86 | Aug 22, 12:45 PM | Aug 22, 2:06 PM | 1h 21m |
| 86 | Aug 22, 8:36 AM | Aug 22, 12:32 PM | 3h 56m |

Address Report – Samsara

# Site Report for Venice High

🔍

86                                                          Tags ▾

27 of 76 visits match '86' from Aug 13, 2018 12:00 AM - Aug 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Aug 16, 9:00 AM | Aug 16, 11:38 AM | 2h 38m |
| 86 | Aug 16, 7:02 AM | Aug 16, 8:47 AM | 1h 45m |
| 86 | Aug 15, 12:51 PM | Aug 15, 2:50 PM | 1h 58m |
| 86 | Aug 15, 7:07 AM | Aug 15, 12:39 PM | 5h 32m |
| 86 | Aug 14, 11:53 AM | Aug 14, 2:07 PM | 2h 14m |
| 86 | Aug 14, 7:03 AM | Aug 14, 11:36 AM | 4h 33m |
| 86 | Aug 13, 7:39 AM | Aug 13, 2:59 PM | 7h 20m |

Previous    1    2

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

86                                                    Tags ▾

31 of 130 visits match '86' from Sep 1, 2018 12:00 AM - Sep 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Sep 28, 1:00 PM | Sep 28, 2:15 PM | 1h 15m |
| 86 | Sep 28, 7:12 AM | Sep 28, 12:43 PM | 5h 31m |
| 86 | Sep 27, 9:54 AM | Sep 27, 2:02 PM | 4h 7m |
| 86 | Sep 27, 6:57 AM | Sep 27, 9:37 AM | 2h 39m |
| 86 | Sep 26, 1:41 PM | Sep 26, 2:09 PM | 27m 42s |
| 86 | Sep 26, 7:04 AM | Sep 26, 12:36 PM | 5h 31m |
| 86 | Sep 25, 9:55 AM | Sep 25, 2:14 PM | 4h 18m |
| 86 | Sep 25, 6:56 AM | Sep 25, 9:45 AM | 2h 49m |
| 86 | Sep 24, 6:49 AM | Sep 24, 11:44 AM | 4h 55m |
| 86 | Sep 21, 7:49 AM | Sep 21, 2:16 PM | 6h 27m |
| 86 | Sep 21, 7:08 AM | Sep 21, 7:23 AM | 14m 53s |
| 86 | Sep 20, 11:56 AM | Sep 20, 2:11 PM | 2h 14m — SICK |
| 86 | Sep 18, 6:58 AM | Sep 18, 2:12 PM | 7h 14m |
| 86 | Sep 17, 10:06 AM | Sep 17, 2:00 PM | 3h 53m |

Address Report – Samsara

# Site Report for Venice High

🔍

86

Tags ▾

31 of 130 visits match '86' from Sep 1, 2018 12:00 AM - Sep 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Sep 11, 7:02 AM | Sep 11, 2:09 PM | 7h 7m |
| 86 | Sep 7, 1:47 PM | Sep 7, 2:11 PM | 24m |
| 86 | Sep 7, 12:58 PM | Sep 7, 1:34 PM | 35m 41s |
| 86 | Sep 7, 10:42 AM | Sep 7, 12:28 PM | 1h 45m |
| 86 | Sep 7, 6:57 AM | Sep 7, 10:08 AM | 3h 11m |
| 86 | Sep 6, 12:36 PM | Sep 6, 2:08 PM | 1h 31m |
| 86 | Sep 6, 6:49 AM | Sep 6, 12:15 PM | 5h 25m |
| 86 | Sep 5, 11:03 AM | Sep 5, 2:07 PM | 3h 3m |
| 86 | Sep 5, 6:49 AM | Sep 5, 10:49 AM | 4h |
| 86 | Sep 4, 10:54 AM | Sep 4, 2:10 PM | 3h 15m |
| 86 | Sep 4, 6:50 AM | Sep 4, 10:43 AM | 3h 53m |

Previous   1   2

1/25/2019                                       Address Report – Samsara

# Site Report for Venice High

🔍

86                                              Tags  ▾

34 of 137 visits match '86' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 86 | Oct 31, 6:57 AM | Oct 31, 2:08 PM | 7h 11m |
| 86 | Oct 30, 12:02 PM | Oct 30, 2:16 PM | 2h 13m |
| 86 | Oct 30, 6:54 AM | Oct 30, 11:50 AM | 4h 56m |
| 86 | Oct 29, 12:26 PM | Oct 29, 2:14 PM | 1h 48m |
| 86 | Oct 29, 6:51 AM | Oct 29, 12:13 PM | 5h 22m |
| 86 | Oct 26, 12:10 PM | Oct 26, 2:13 PM | 2h 2m |
| 86 | Oct 26, 6:55 AM | Oct 26, 11:49 AM | 4h 54m |
| 86 | Oct 25, 12:58 PM | Oct 25, 3:06 PM | 2h 7m |
| 86 | Oct 25, 8:57 AM | Oct 25, 12:54 PM | 3h 56m |
| 86 | Oct 25, 6:55 AM | Oct 25, 8:51 AM | 1h 55m |
| 86 | Oct 22, 12:19 PM | Oct 22, 2:03 PM | 1h 44m |
| 86 | Oct 22, 6:41 AM | Oct 22, 12:08 PM | 5h 27m |
| 86 | Oct 18, 6:58 AM | Oct 18, 1:57 PM | 6h 59m |
| 86 | Oct 17, 9:52 AM | Oct 17, 2:03 PM | 4h 10m |

1/25/2019                                           Address Report – Samsara

# Site Report for Venice High

🔍

86                                                        Tags ▾

34 of 137 visits match '86' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 86 | Oct 11, 6:49 AM | Oct 11, 11:47 AM | 4h 58m |
| 86 | Oct 10, 1:19 PM | Oct 10, 2:17 PM | 57m 42s |
| 86 | Oct 10, 6:54 AM | Oct 10, 1:06 PM | 6h 12m |
| 86 | Oct 9, 11:18 AM | Oct 9, 2:10 PM | 2h 51m |
| 86 | Oct 9, 6:38 AM | Oct 9, 11:03 AM | 4h 24m |
| 86 | Oct 8, 6:52 AM | Oct 8, 2:14 PM | 7h 21m |
| 86 | Oct 5, 10:22 AM | Oct 5, 2:17 PM | 3h 54m — SICK 0700-0930 |
| 86 | Oct 4, 12:46 PM | Oct 4, 2:04 PM | 1h 17m |
| 86 | Oct 4, 6:55 AM | Oct 4, 12:36 PM | 5h 41m |
| 86 | Oct 3, 6:41 AM | Oct 3, 1:59 PM | 7h 18m |
| 86 | Oct 2, 12:28 PM | Oct 2, 2:37 PM | 2h 8m |
| 86 | Oct 2, 6:58 AM | Oct 2, 12:22 PM | 5h 23m |
| 86 | Oct 1, 1:11 PM | Oct 1, 2:04 PM | 53m 24s |
| 86 | Oct 1, 6:52 AM | Oct 1, 10:25 AM | 3h 33m |

# Site Report for Venice High

🔍

86

Tags ▾

27 of 104 visits match '86' from Nov 1, 2018 12:00 AM - Nov 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 86 | Nov 6, 10:00 AM | Nov 6, 2:12 PM | 4h 12m |
| 86 | Nov 6, 7:54 AM | Nov 6, 8:58 AM | 1h 3m |
| 86 | Nov 6, 6:57 AM | Nov 6, 7:18 AM | 20m 56s |
| 86 | Nov 5, 12:36 PM | Nov 5, 2:16 PM | 1h 39m |
| 86 | Nov 5, 6:41 AM | Nov 5, 12:13 PM | 5h 31m |
| 86 | Nov 2, 6:43 AM | Nov 2, 2:18 PM | 7h 34m |
| 86 | Nov 1, 6:58 AM | Nov 1, 2:17 PM | 7h 18m |

Previous    1    2

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

86                                                    Tags ▾

21 of 68 visits match '86' from Dec 1, 2018 12:00 AM - Dec 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Dec 20, 11:30 AM | Dec 20, 2:43 PM | 3h 12m |
| 86 | Dec 20, 8:58 AM | Dec 20, 10:56 AM | 1h 58m |
| 86 | Dec 20, 6:49 AM | Dec 20, 8:38 AM | 1h 49m |
| 86 | Dec 19, 12:51 PM | Dec 19, 2:43 PM | 1h 51m |
| 86 | Dec 19, 11:21 AM | Dec 19, 11:34 AM | 12m 32s |
| 86 | Dec 19, 6:49 AM | Dec 19, 10:55 AM | 4h 6m |
| 86 | Dec 18, 7:06 AM | Dec 18, 2:14 PM | 7h 7m |
| 86 | Dec 17, 6:42 AM | Dec 17, 2:17 PM | 7h 34m |
| 86 | Dec 14, 6:55 AM | Dec 14, 2:15 PM | 7h 19m |
| 86 | Dec 13, 12:42 PM | Dec 13, 2:15 PM | 1h 33m |
| 86 | Dec 13, 6:56 AM | Dec 13, 12:36 PM | 5h 40m |
| 86 | Dec 12, 6:53 AM | Dec 12, 2:12 PM | 7h 19m |
| 86 | Dec 11, 6:52 AM | Dec 11, 2:16 PM | 7h 23m |
| 86 | Dec 7, 12:59 PM | Dec 7, 2:09 PM | 1h 9m |

1/25/2019                                    Address Report — Samsara

# Site Report for Venice High

🔍

86                                              Tags ▾

21 of 68 visits match '86' from Dec 1, 2018 12:00 AM - Dec 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Dec 3, 6:54 AM | Dec 3, 2:16 PM | 7h 22m |

Previous    1    2

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

86                                          Tags ▾

27 of 59 visits match '86' from Jan 1, 2019 12:00 AM - Jan 25, 2019 10:08 AM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Jan 25, 7:00 AM | Jan 25, 10:08 AM | 3h 7m |
| 86 | Jan 24, 2:38 PM | Jan 24, 2:59 PM | 20m 51s |
| 86 | Jan 24, 12:52 PM | Jan 24, 2:12 PM | 1h 19m |
| 86 | Jan 24, 6:43 AM | Jan 24, 12:38 PM | 5h 55m |
| 86 | Jan 23, 2:36 PM | Jan 23, 3:00 PM | 24m 22s |
| 86 | Jan 23, 10:58 AM | Jan 23, 2:11 PM | 3h 13m |
| 86 | Jan 23, 8:08 AM | Jan 23, 9:32 AM | 1h 24m |
| 86 | Jan 23, 6:38 AM | Jan 23, 7:48 AM | 1h 9m |
| 86 | Jan 22, 6:41 AM | Jan 22, 2:05 PM | 7h 24m |
| 86 | Jan 19, 3:18 PM | Jan 19, 5:58 PM | 2h 40m |
| 86 | Jan 18, 12:27 PM | Jan 18, 2:12 PM | 1h 45m |
| 86 | Jan 18, 6:51 AM | Jan 18, 12:18 PM | 5h 26m |
| 86 | Jan 17, 6:54 AM | Jan 17, 2:09 PM | 7h 15m |
| 86 | Jan 16, 2:37 PM | Jan 16, 3:23 PM | 45m 53s |

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

86                                                    Tags ▾

27 of 59 visits match '86' from Jan 1, 2019 12:00 AM - Jan 25, 2019 10:08 AM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 86 | Jan 10, 7:10 AM | Jan 10, 2:09 PM | 6h 58m |
| 86 | Jan 9, 6:58 AM | Jan 9, 2:01 PM | 7h 3m |
| 86 | Jan 8, 12:25 PM | Jan 8, 12:45 PM | 20m 29s – *IN-SERVICE TRAINING @0840* |
| 86 | Jan 7, 2:39 PM | Jan 7, 3:16 PM | 37m 16s |
| 86 | Jan 7, 1:14 PM | Jan 7, 1:42 PM | 28m 14s |
| 86 | Jan 7, 11:07 AM | Jan 7, 12:37 PM | 1h 30m |
| 86 | Jan 7, 7:01 AM | Jan 7, 10:51 AM | 3h 50m |

Previous   1   2

1/25/2019                                       Address Report – Samsara

# Site Report for Venice High — hours 7:30 – 2:15

VEHICLE
#→ (59) — Ofc. Roderigo Morales              Tags ▾

20 of 76 visits match '59' from Aug 13, 2018 12:00 AM - Aug 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 59 | Aug 31, 7:27 AM | Aug 31, 12:05 PM | 4h 38m |
| 59 | Aug 30, 1:17 PM | Aug 30, 2:04 PM | 46m 13s |
| 59 | Aug 30, 7:27 AM | Aug 30, 11:56 AM | 4h 28m |
| 59 | Aug 29, 7:28 AM | Aug 29, 10:53 AM | 3h 24m |
| 59 | Aug 28, 7:27 AM | Aug 28, 2:12 PM | 6h 44m |
| 59 | Aug 27, 7:28 AM | Aug 27, 2:11 PM | 6h 43m |
| 59 | Aug 24, 4:53 PM | Aug 24, 11:33 PM | 6h 40m |
| 59 | Aug 24, 7:25 AM | Aug 24, 2:12 PM | 6h 47m |
| 59 | Aug 23, 1:23 PM | Aug 23, 2:03 PM | 40m 15s |
| 59 | Aug 23, 8:17 AM | Aug 23, 1:12 PM | 4h 54m |
| 59 | Aug 23, 7:25 AM | Aug 23, 8:03 AM | 37m 32s |
| 59 | Aug 22, 7:27 AM | Aug 22, 2:07 PM | 6h 39m |
| 59 | Aug 21, 7:27 AM | Aug 21, 2:08 PM | 6h 40m |
| 59 | Aug 20, 7:27 AM | Aug 20, 2:38 PM | 7h 10m |

Address Report — Samsara

# Site Report for Venice High

🔍

59                                                    Tags ▾

32 of 130 visits match '59' from Sep 1, 2018 12:00 AM - Sep 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---|---|---|---|
| 59 | Sep 28, 4:53 PM | Sep 29, 12:22 AM | 7h 29m |
| 59 | Sep 28, 7:27 AM | Sep 28, 2:14 PM | 6h 47m |
| 59 | Sep 27, 11:53 AM | Sep 27, 2:15 PM | 2h 22m |
| 59 | Sep 27, 7:27 AM | Sep 27, 11:42 AM | 4h 14m |
| 59 | Sep 26, 7:29 AM | Sep 26, 2:09 PM | 6h 39m |
| 59 | Sep 25, 1:25 PM | Sep 25, 2:16 PM | 50m 37s |
| 59 | Sep 25, 9:17 AM | Sep 25, 12:57 PM | 3h 39m |
| 59 | Sep 25, 7:27 AM | Sep 25, 7:49 AM | 21m 10s |
| 59 | Sep 24, 7:27 AM | Sep 24, 2:14 PM | 6h 46m |
| 59 | Sep 20, 12:45 PM | Sep 20, 2:16 PM | 1h 30m |
| 59 | Sep 20, 7:26 AM | Sep 20, 12:33 PM | 5h 6m |
| 59 | Sep 19, 12:59 PM | Sep 19, 2:16 PM | 1h 16m |
| 59 | Sep 19, 11:41 AM | Sep 19, 12:56 PM | 1h 15m |
| 59 | Sep 19, 11:02 AM | Sep 19, 11:40 AM | 37m 29s |

1/25/2019                                              Address Report -- Samsara

# Site Report for Venice High

🔍

59                                                              Tags ▾

32 of 130 visits match '59' from Sep 1, 2018 12:00 AM - Sep 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Sep 14, 7:26 AM | Sep 14, 12:57 PM | 5h 31m |
| 59 | Sep 13, 9:42 AM | Sep 13, 2:08 PM | 4h 25m |
| 59 | Sep 13, 7:30 AM | Sep 13, 8:49 AM | 1h 19m |
| 59 | Sep 12, 7:27 AM | Sep 12, 2:12 PM | 6h 45m |
| 59 | Sep 11, 7:25 AM | Sep 11, 2:31 PM | 7h 5m |
| 59 | Sep 10, 7:25 AM | Sep 10, 2:06 PM | 6h 40m |
| 59 | Sep 7, 5:00 PM | Sep 7, 9:32 PM | 4h 32m |
| 59 | Sep 7, 9:18 AM | Sep 7, 2:11 PM | 4h 52m |
| 59 | Sep 7, 7:26 AM | Sep 7, 8:27 AM | 1h |
| 59 | Sep 6, 7:27 AM | Sep 6, 2:08 PM | 6h 41m |
| 59 | Sep 5, 7:32 AM | Sep 5, 2:07 PM | 6h 35m |
| 59 | Sep 4, 7:27 AM | Sep 4, 2:09 PM | 6h 42m |

Previous   1   2

Address Report – Samsara

# Site Report for Venice High

🔍

59

Tags  ▾

33 of 137 visits match '59' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Oct 31, 1:56 PM | Oct 31, 2:32 PM | 36m |
| 59 | Oct 31, 7:29 AM | Oct 31, 1:47 PM | 6h 18m |
| 59 | Oct 30, 7:29 AM | Oct 30, 2:34 PM | 7h 4m |
| 59 | Oct 29, 7:29 AM | Oct 29, 2:49 PM | 7h 20m |
| 59 | Oct 26, 3:13 PM | Oct 26, 4:06 PM | 52m 53s |
| 59 | Oct 26, 7:28 AM | Oct 26, 12:57 PM | 5h 28m |
| 59 | Oct 25, 1:51 PM | Oct 25, 3:08 PM | 1h 16m |
| 59 | Oct 25, 7:28 AM | Oct 25, 11:55 AM | 4h 26m |
| 59 | Oct 24, 7:26 AM | Oct 24, 2:32 PM | 7h 5m |
| 59 | Oct 23, 7:29 AM | Oct 23, 3:55 PM | 8h 25m |
| 59 | Oct 22, 8:16 AM | Oct 22, 2:42 PM | 6h 25m |
| 59 | Oct 22, 7:27 AM | Oct 22, 7:36 AM | 8m 15s |
| 59 | Oct 19, 7:04 AM | Oct 19, 12:01 PM | 4h 56m |
| 59 | Oct 17, 2:39 PM | Oct 17, 3:14 PM | 34m 35s |

Address Report – Samsara

# Site Report for Venice High

🔍

59

Tags ▾

33 of 137 visits match '59' from Oct 1, 2018 12:00 AM - Oct 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Oct 11, 7:29 AM | Oct 11, 9:04 AM | 1h 34m |
| 59 | Oct 10, 12:41 PM | Oct 10, 2:18 PM | 1h 36m |
| 59 | Oct 10, 7:30 AM | Oct 10, 10:51 AM | 3h 21m |
| 59 | Oct 9, 7:29 AM | Oct 9, 2:10 PM | 6h 40m |
| 59 | Oct 8, 7:26 AM | Oct 8, 2:13 PM | 6h 47m |
| 59 | Oct 5, 7:27 AM | Oct 5, 2:18 PM | 6h 50m |
| 59 | Oct 4, 10:49 AM | Oct 4, 2:04 PM | 3h 14m |
| 59 | Oct 4, 7:30 AM | Oct 4, 10:28 AM | 2h 57m |
| 59 | Oct 3, 7:29 AM | Oct 3, 1:59 PM | 6h 30m |
| 59 | Oct 2, 7:30 AM | Oct 2, 2:21 PM | 6h 51m |
| 59 | Oct 1, 1:05 PM | Oct 1, 2:04 PM | 58m 48s |
| 59 | Oct 1, 9:06 AM | Oct 1, 1:00 PM | 3h 53m |
| 59 | Oct 1, 7:29 AM | Oct 1, 7:55 AM | 26m 17s |

*(handwritten annotation: WHEN HE COVERED FOR OFC. LONG?)*

Previous   1   2

1/25/2019

# Site Report for Venice High

🔍

59                                          Tags ▾

27 of 104 visits match '59' from Nov 1, 2018 12:00 AM - Nov 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Nov 30, 7:27 AM | Nov 30, 3:49 PM | 8h 22m |
| 59 | Nov 29, 9:38 AM | Nov 29, 3:55 PM | 6h 17m |
| 59 | Nov 29, 7:27 AM | Nov 29, 9:25 AM | 1h 57m |
| 59 | Nov 28, 1:30 PM | Nov 28, 2:31 PM | 1h |
| 59 | Nov 27, 7:31 AM | Nov 27, 2:36 PM | 7h 5m |
| 59 | Nov 26, 7:27 AM | Nov 26, 2:35 PM | 7h 7m |
| 59 | Nov 21, 8:31 AM | Nov 21, 9:57 AM | 1h 26m |
| 59 | Nov 20, 12:38 PM | Nov 20, 2:38 PM | 2h |
| 59 | Nov 20, 7:26 AM | Nov 20, 12:15 PM | 4h 48m |
| 59 | Nov 16, 4:52 PM | Nov 16, 11:05 PM | 6h 13m |
| 59 | Nov 16, 7:30 AM | Nov 16, 2:38 PM | 7h 8m |
| 59 | Nov 14, 7:28 AM | Nov 14, 2:44 PM | 7h 16m |
| 59 | Nov 12, 2:01 PM | Nov 12, 2:36 PM | 34m 50s |
| 59 | Nov 12, 7:26 AM | Nov 12, 1:52 PM | 6h 25m |

Address Report – Samsara

# Site Report for Venice High

🔍

59

Tags ▾

27 of 104 visits match '59' from Nov 1, 2018 12:00 AM - Nov 30, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Nov 7, 7:27 AM | Nov 7, 8:28 AM | 1h 1m |
| 59 | Nov 6, 11:11 AM | Nov 6, 3:00 PM | 3h 49m |
| 59 | Nov 6, 7:27 AM | Nov 6, 9:16 AM | 1h 48m |
| 59 | Nov 5, 7:29 AM | Nov 5, 2:42 PM | 7h 12m |
| 59 | Nov 2, 4:56 PM | Nov 2, 10:18 PM | 5h 21m |
| 59 | Nov 1, 12:41 PM | Nov 1, 2:34 PM | 1h 52m |
| 59 | Nov 1, 7:28 AM | Nov 1, 12:33 PM | 5h 4m |

Previous   1   2

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

59                                          Tags ▾

17 of 68 visits match '59' from Dec 1, 2018 12:00 AM - Dec 31, 2018 11:59 PM

| VEHICLE | ARRIVAL ▼ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Dec 20, 1:01 PM | Dec 20, 2:42 PM | 1h 41m |
| 59 | Dec 20, 7:58 AM | Dec 20, 12:48 PM | 4h 50m |
| 59 | Dec 20, 7:43 AM | Dec 20, 7:51 AM | 7m 58s |
| 59 | Dec 19, 1:04 PM | Dec 19, 2:39 PM | 1h 35m |
| 59 | Dec 19, 7:29 AM | Dec 19, 12:32 PM | 5h 3m |
| 59 | Dec 18, 7:31 AM | Dec 18, 12:24 PM | 4h 52m |
| 59 | Dec 17, 7:29 AM | Dec 17, 2:37 PM | 7h 7m |
| 59 | Dec 14, 7:31 AM | Dec 14, 2:36 PM | 7h 4m |
| 59 | Dec 13, 7:26 AM | Dec 13, 2:37 PM | 7h 11m |
| 59 | Dec 12, 8:16 AM | Dec 12, 2:34 PM | 6h 17m |
| 59 | Dec 12, 7:30 AM | Dec 12, 7:47 AM | 16m 50s |
| 59 | Dec 11, 7:30 AM | Dec 11, 3:08 PM | 7h 37m |
| 59 | Dec 10, 7:29 AM | Dec 10, 2:13 PM | 6h 44m |
| 59 | Dec 5, 10:26 AM | Dec 5, 3:00 PM | 4h 33m |

1/25/2019                                    Address Report – Samsara

# Site Report for Venice High

🔍

59                                              Tags ▾

14 of 59 visits match '59' from Jan 1, 2019 12:00 AM - Jan 25, 2019 10:06 AM

| VEHICLE | ARRIVAL ▽ | DEPARTURE | TIME ON SITE |
|---------|-----------|-----------|--------------|
| 59 | Jan 25, 7:34 AM | Jan 25, 10:06 AM | 2h 31m |
| 59 | Jan 24, 7:39 AM | Jan 24, 3:00 PM | 7h 21m |
| 59 | Jan 23, 7:34 AM | Jan 23, 3:00 PM | 7h 26m |
| 59 | Jan 22, 12:18 PM | Jan 22, 2:36 PM | 2h 18m |
| 59 | Jan 22, 7:36 AM | Jan 22, 9:38 AM | 2h 2m |
| 59 | Jan 21, 8:01 AM | Jan 21, 1:18 PM | 5h 17m |
| 59 | Jan 18, 7:36 AM | Jan 18, 2:39 PM | 7h 2m |
| 59 | Jan 17, 9:51 AM | Jan 17, 2:38 PM | 4h 47m |
| 59 | Jan 17, 7:31 AM | Jan 17, 9:25 AM | 1h 53m |
| 59 | Jan 16, 7:37 AM | Jan 16, 3:23 PM | 7h 45m |
| 59 | Jan 14, 7:27 AM | Jan 14, 2:42 PM | 7h 14m |
| 59 | Jan 9, 12:54 PM | Jan 9, 2:48 PM | 1h 54m |
| 59 | Jan 9, 7:29 AM | Jan 9, 12:42 PM | 5h 12m |
| 59 | Jan 8, 7:28 AM | Jan 8, 2:11 PM | 6h 43m |